**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAR 5 2004**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

KEITH V. WEATHERSBY,

Defendant - Appellant.

No. 02-3322
(D.C. No. 98-CR-20076-03-JWL)
(District of Kansas)

**ORDER AND JUDGMENT**[*]

Before **MURPHY**, **ANDERSON**, and **McCONNELL**, Circuit Judges.

## I.     INTRODUCTION

Defendant Keith V. Weathersby was convicted by a jury of conspiracy to possess with intent to distribute cocaine and of possession with intent to distribute cocaine or aiding and abetting the possession with intent to distribute cocaine.[1]

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[1] The verdict form recording the jury's conclusion articulated count 2 against Weathersby as "possess[ion] with the intent to distribute, or aid[ing] and abett[ing] the same . . . ." [Vol 2. at tab 159] The only possible possession to which the aiding and abetting verdict could have referred was the possession by

(continued...)

[Appx. Vol. 2 at Tab 159] At the close of the government's evidence, and again following trial, Weathersby moved for a judgment of acquittal arguing that the evidence against him was insufficient to support a conviction. [Vol. 9 at 570, Vol. 3 at tab 162] The court denied both motions. [Vol. 9 at 603, Vol. 3, tab 173 at 15] After the verdict was entered, Weathersby filed a motion for a new trial. [Vol. 3, tab. 181] The district court denied that motion as well. [Vol. 3, tab 173 at 15] Weathersby was sentenced to 292 months' imprisonment. [Vol. 3, tab 184 at 2]

On appeal, Weathersby challenges the denial of his motions for a judgment of acquittal and motion for a new trial. [W's Br. at 16-18] Weathersby also argues that the district court committed plain error by applying an upward adjustment to his base offense level for reckless endangerment. [W's Br. at 20] This court exercises jurisdiction pursuant to 28 U.S.C. § 1291 and **affirms** the district court's decisions.

## II.    BACKGROUND

Denise Theus and Marlane Battle were stopped by highway patrol troopers while driving in Kansas. [Vol. 8 at 190-91] The troopers discovered four kilograms of cocaine hidden inside the spare tire of the car they drove. [Id. at

---

[1](...continued)
Theus and Battle.

194] The women told the officers that they were driving the car from Los Angeles to Kansas City for a friend but that they were unaware of the drugs hidden in the tire. [Id. at 228] The troopers contacted the DEA, and DEA agents attempted a controlled delivery of the drugs in Kansas City. [Id. at 198, 233] After the attempted delivery failed, the women were released. [Id. at 230] Law enforcement agents continued their investigation into the source of the drugs.

Sometime later, after Theus had been arrested on other charges, she was indicted in connection with the four kilograms for possession with intent to distribute cocaine. [Vol. 1, tab 1; Vol 9 at 483-84] She agreed to cooperate with prosecutors and pleaded guilty. [Vol. 11 at 128] The government then obtained a superseding indictment against Theus, Battle, Weathersby, and Gary Terrell. [Vol. 1, tab 26] The indictment charged that the four defendants conspired to distribute cocaine in Kansas between November 1996 and January 1997. [Id.] Battle and Terrell were arrested and eventually pleaded guilty to possession with the intent to distribute cocaine. [App. Vol. 1 at tab 62, 65]

Weathersby eluded capture for some time after his co-conspirators had been apprehended. On July 6, 2001, law enforcement officers followed Weathersby to a freeway entrance ramp in Los Angeles. [Transcript of 9/6 at 9-10, 16] When Weathersby stopped at a traffic light, one officer maneuvered his vehicle to block Weathersby from driving onto the freeway. [Id. at 17] Weathersby then rammed

the officer's car and escaped by driving up an embankment onto the freeway. [Id. at 18-19] Weathersby was apprehended about a month later. [Id. at 24-25] By the time Weathersby was caught, Terrell, Theus, and Battle had agreed to assist in his prosecution. [Vol. 5 at 4-5, Vols 13, 16]

At trial, Terrell testified that he and Weathersby had been close friends and that they had both sold cocaine in Los Angeles. [Vol. 11 at 11] Terrell stated that, in the past, he and Weathersby had sometimes pooled their money in order to purchase bulk quantities of cocaine. [Id.] Terrell also testified that he and Theus were partners in the business of selling cocaine, which they often purchased from Weathersby. [Id. at 29-30, 132] Although Terrell and Theus purchased the cocaine in Los Angeles, they usually sold it in Kansas City, Kansas and Kansas City, Missouri. [Id. at 123, 135]. Terrell testified that Weathersby provided the four kilograms of cocaine seized by Kansas Highway Patrol when Theus and Battle were pulled over. [Vol. 11 at 33-34]

Terrell also testified that Weathersby assisted him in obtaining the automobile used by Theus and Battle to transport the cocaine. Weathersby suggested that Terrell contact a certain salesman and accompanied Terrell when he went to lease the vehicle. [Vol. 11 at 17-18]

Theus testified that Weathersby regularly supplied her with cocaine and had completed a two-and-a-half kilogram deal with her shortly before the four

4

kilogram purchase. [Id. at 132-33, 136] Theus also testified that Weathersby had supplied the four kilograms discovered in the spare tire. [Id. at 141-43] Battle's testimony supported the evidence given by Theus and Terrell. She testified that Weathersby told her that he made "a lot of money" from the cocaine market in Kansas City and that he dealt with Theus in distributing cocaine there. [Id. at 110]. Battle stated that she was present on one occasion when Theus purchased cocaine from Weathersby. [Id. at 107-09]

At the close of the prosecution's evidence, Weathersby moved for a judgment of acquittal, arguing that there was insufficient evidence to show that he had any agreement with his co-conspirators to distribute cocaine in Kansas. [Vol. 9 at 570-71] The district court denied the motion. [Id. at 603] After the jury found him guilty, Weathersby renewed the motion, and the court again denied it. [Vol. 3 at tab. 173]

Before sentencing, Weathersby filed a motion seeking a new trial based on information given by Johnny Frazier, a fellow inmate. [Vol. 3, tab 181] In an interview with Weathersby's counsel, Frazier stated that Terrell had told him the four kilograms of cocaine had been supplied by someone other than Weathersby. [Id. at 3] Frazier reported that Terrell had planned to falsely accuse Weathersby so that his sentenced would be reduced. The district court denied the motion, holding that a new trial could not be granted on the basis of impeachment

5

evidence and that in the alternative a new trial was unlikely to produce an acquittal. [Vol. 7 at 24, 26]

At sentencing, the district court adjusted Weathersby's base offense level upward by two levels for reckless endangerment during flight pursuant to U.S.S.G. § 3C1.2. [Vol. 18 at 27-28] The court based the adjustment on Weathersby's escape from law enforcement officers on July 6, 2001. [Id.] Weathersby appeals the district court's sentencing decision as well as the district court's rulings on his motions for a judgment of acquittal and for a new trial.

## III. DISCUSSION

### A. The Motions for a Judgment of Acquittal

Whether the evidence is sufficient to support the judgment is reviewed de novo. *United States v. McKissick*, 204 F.3d 1282, 1289 (10th Cir. 2000). The question is whether the evidence, when viewed in the light most favorable to the government, would permit a reasonable jury to find guilt beyond a reasonable doubt. *Id.*

#### 1. The Conspiracy Charge

A conviction for conspiracy requires the government to show: (1) two or more persons including the defendant, agreed to violate the law, (2) the defendant knew the essential objective of the conspiracy; (3) the defendant knowingly and voluntarily became part of the conspiracy; and (4) the alleged co-conspirators

6

were interdependent. *United States v. Ivy*, 83 F.3d 1266, 1285 (10th Cir. 1996). Weathersby argues that there was insufficient evidence of an agreement between him and his co-conspirators to sustain a conviction for conspiracy to distribute cocaine. [W's br. at 25-26] Weathersby asserts that, at best, the evidence showed only a buyer-seller relationship. [Id. at 28-29] This circuit has held that proof of the existence of a buyer-seller relationship, without more, is inadequate to tie the buyer to a larger conspiracy. *See United States v. Flores*, 149 F.3d 1272, 1277 (10th Cir. 1998). As we noted in *Ivy*, however, "the purpose of the buyer-seller rule is to separate consumers, who do not plan to redistribute drugs for profit, from street-level, mid-level, and other distributors, who do intend to redistribute drugs for profit, thereby furthering the objective of the conspiracy." *Ivy,* 83 F.3d at 1285-86. The testimony of Terrell, Theus, and Battle clearly showed that Weathersby was not a buyer, but rather a distributor who sold relatively large quantities of narcotics for redistribution. Likewise, Terrell and Theus acknowledged that they were not mere consumers, but purchased cocaine in order to sell it to others.

Weathersby asserts, however, that in this specific transaction he lacked a "shared stake in the buyer's illegal venture." Therefore, according to Weathersby, the sale of the four kilograms could not have been part of a larger conspiracy. *United States v. Rivera*, 273 F.3d 751, 755 (7th Cir. 2001)(quotation

7

omitted).[2] [W's Br. at 25] Weathersby notes that fronting the narcotics in expectation of payment is important evidence of a conspiracy to distribute and is noticeably absent in this case. [W's Br. at 26] Weathersby points out that Terrell also testified that he and Weathersby were not partners, had no agreement regarding distribution of the drugs, and that once the money changed hands Weathersby had no stake in the outcome of Terrell's and Theus's activity. [Vol. 11. at 12, 74-75]

Even assuming that if Weathersby lacked a "shared stake in the buyer's illegal venture" the buyer-seller rule would apply, that is not the situation in this case. While the defendant's partial summary of Terrell's testimony is accurate, it ignores other evidence in the case showing that Weathersby had a continuing interest in the disposition of the drugs at issue in this case. Weathersby told Battle that he made a great deal of money from the Kansas cocaine market and knew that Theus had contacts there. [Id. at 110] Battle also noted that Weathersby stated that he worked with Theus to distribute cocaine in Kansas City.

---

[2] Weathersby argues that this court should use the four-factor test developed in *United States v. Rivera* to determine whether a buyer and a seller were involved in a conspiracy. [W's Br. at 25] This test examines: (1) the length of the relationship between the buyer and seller, (2) whether there was an established method of payment such as fronting, (3) the extent to which the transactions were standardized, and (4) the level of mutual trust between the buyer and the seller. *United States v. Rivera*, 273 F.3d 751, 755 (7th Cir. 2001). We decline to do so. Because *United States v. Ivy*, 83 F.3d 1266 (10th Cir. 1996) is controlling in this case it is unnecessary for this court to utilize *Rivera*.

[Id.]  As noted, Weathersby also assisted in obtaining a transport vehicle from a dealership in Kansas City, Missouri.

Although much of this evidence relates to drug transactions not encompassed in the indictment in this case, the evidence of the course of conduct is highly relevant to determining the nature of Weathersby's relationship with his co-conspirators.  Essentially, Theus and Terrell operated as retailers for Weathersby and he knew that if business was "booming in Kansas" he would continue to make money.  [Vol. 11 at 110]  Based on the evidence described above, the jury could reasonably infer that Weathersby's interest in the conspiracy went beyond the simple act of selling the four kilograms to Theus and Terrell.  Thus, the buyer-seller rule simply does not apply in this case.

There is also sufficient evidence of the factors listed in *Ivy*.  From the evidence described above, the jury could readily infer that Weathersby knew the intentions of Terrell and Theus and agreed to assist them.  Likewise, the evidence of the course of conduct between the parties supports the conclusion that the parties were interdependent and that Weathersby participated willingly.  The jury could have inferred that Theus and Terrell relied on Weathersby to provide drugs and transportation, and that Weathersby relied on Theus and Terrell as return buyers to pay him for the drugs and distribute them.  Accordingly, we conclude that there is sufficient evidence to sustain the jury's verdict concerning the

9

conspiracy to distribute cocaine.

### 2.    The Possession Charge

The jury convicted Weathersby of either possessing cocaine with the intent to distribute or aiding and abetting possession by his co-conspirators.[3] [Vol 2 at Tab 159] Weathersby argues that there is insufficient evidence to support a conviction regarding the aiding and abetting for the same reasons that the evidence does not support a conviction for conspiracy. [W's Reply Br. at 10] For reasons discussed above we reject that argument and conclude there was sufficient evidence to support the jury's verdict. Weathersby also argues that he did not possess the cocaine because he had no "ability to guide the destination of the [drug]." *United States v. Carter*, 130 F.3d 1432, 1441 (10th Cir. 1997). We reject that argument as well because constructive possession may be joint among several individuals involved in a conspiracy. *United States v. Ruiz-Castro*, 92 F.3d 1519, 1531 (10th Cir. 1996). Accordingly, we conclude that the evidence was sufficient to sustain the aiding and abetting conviction.

## B.    The Motion for a New Trial

The denial of a motion for a new trial based on newly discovered evidence is reviewed for an abuse of discretion. *United States v. Sutton*, 767 F.2d 726, 728 (10th Cir. 1985). To prevail on such a motion, the defendant must show that: (1)

---

[3] See footnote 1.

10

the evidence was discovered after trial; (2) the failure to learn of the evidence was not caused by defendant's own lack of diligence; (3) the new evidence is not merely impeaching; (4) the new evidence is material to the principal issues involved; and (5) the new evidence is of such a nature that in a new trial it would probably produce an acquittal. *United States v. Sinclair*, 109 F.3d 1527, 1531 (10th Cir. 1997).

Weathersby argues that Frazier's testimony contradicted the government's only evidence that Weathersby supplied the four kilograms of cocaine seized in this case.[4] [W's reply br. at 11] Weathersby argues that the district court erred in concluding that Terrell's testimony remained credible despite the information offered by Frazier. [W's br. at 38] Weathersby notes that the court felt Terrell had little incentive to lie because he had already received a substantial reduction in his sentence. [Id.] He argues that the court should have recognized that without directly implicating Weathersby, Terrell had little information to offer prosecutors. [Id.]

That argument fails because Terrell's credibility was already in question

---

[4] The district court held that Frazier's testimony was "merely impeaching" evidence and could not be the basis for a new trial. [Vol 7 at 24] Weathersby argues that the evidence presented by Frazier goes to a central issue in the case and therefore it is not "merely impeaching." [W's Br. at 36-38] We need not reach that question, however, because we agree with the district court's alternative holding [Vol. 7 at 28] that even if a new trial was warranted it would be unlikely to produce a different result.

before the discovery of Frazier's information. Terrell testified about his criminal history, [Vol. 11 at 6-7] about lies he had told in the past, [Id. at 48, 59, 61, 65-66] and about his motivations for testifying against Weathersby. [Id. at 3-6, 10-11] The information offered by Frazier would have added very little. The jury was already aware that Terrell had a grudge against Weathersby and had been given a reduced sentence for his testimony. Moreover, the jury was aware Terrell purchased cocaine both from Weathersby and others. [Id. at 30] Frazier would have added only that Terrell had stated his intention to falsely accuse Weathersby.

We note that Frazier himself would have been subject to significant impeachment. Frazier was incarcerated for money laundering at the time he gave the information and he admitted that there was a conflict between him and Terrell. [Vol. 3, Tab 181 at 2-3] Given Terrell's admissions at trial concerning numerous instances of perjury, his criminal history, and his acknowledgment of a grudge against Weathersby, nothing indicates that Frazier's testimony would have changed the outcome. Accordingly, we conclude that the district court did not abuse its discretion by denying the motion for a new trial.

C. **The Sentencing Adjustment for Reckless Endangerment**

On appeal, Weathersby argues that there must be a connection between the defendant's flight which causes reckless endangerment and the offense of conviction. [W's br. at 40] Weathersby did not raise this issue before the district

12

court.  [Id. at 41]  Therefore, we review the district court's decision for plain error.  *United States v. Brown*, 316 F.3d 1151, 1155 (10th Cir. 2003).  Under the plain error standard, Weathersby must show an error, that is plain and that affects his substantial rights.  *Id.*  If these conditions are met, the court may exercise its discretion to notice the forfeited error, but only if the error seriously affects the fairness, integrity, or public reputation of judicial proceedings.  *Id.*

Under U.S.S.G. § 3C1.2, an upward adjustment of two levels should apply "[i]f the defendant recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer."  Weathersby argues that sentencing adjustments to the base offense level are made based on relevant conduct and the guidelines definition of relevant conduct looks to events occurring "in the course of attempting to avoid detection or responsibility for" the offense of conviction.  U.S.S.G. § 1B1.3(a)(1).  [W's Br. at 42]

This circuit has not decided whether a nexus between the flight and the offense of conviction is required by the Sentencing Guidelines.  We will assume solely for the sake of argument that the district court erred by not examining the connection, but we conclude that any error was not plain.  Generally, we do not consider an error to be "plain" in the absence of controlling precedent.  *United States v. Haney*, 318 F.3d 1161, 1167 (10th Cir. 2003) (en banc).  There is no

13

Supreme Court or binding Tenth Circuit decision on the issue of whether section 3C1.2 requires a connection to the offense of conviction.

Weathersby argues that binding precedent is unnecessary because the clear language of the sentencing guidelines requires a nexus. [W's reply br. at 17] We disagree. Nothing in section 3C1.2 itself requires that there be a connection between the offense of conviction and the flight incident. While it is true that section 1B1.3 would suggest that a nexus is needed, it does not unequivocally state a requirement. That section allows for consideration of "any other information specified in the applicable guideline." U.S.S.G. § 1B1.3(a)(4). In this case, the applicable guideline can be read to call for consideration of reckless endangerment caused during any attempt to escape.

Our conclusion that the language of the Guidelines does not immediately resolve the issue is reinforced by examining relevant case law. No circuit has held that a nexus is required, although some have assumed a nexus is required. *See, e.g., United States v. Duran*, 37 F.3d 557, 559-60 (9th Cir. 1994). On the other hand, an unpublished Tenth Circuit case has rejected the notion that any nexus is required. *See United States v. Green,* 2001 WL 50754 at *2-*3 (10th Cir. Aug. 18, 1999). While these decisions are not binding, they certainly indicate that a substantial question exists as to whether a nexus to the offense of conviction is required by section 3C1.2. Accordingly, we cannot conclude that

14

the district court's decision to apply the adjustment was plain error.

## IV.  CONCLUSION

For the foregoing reasons, this court **affirms** the district court's denial of the motion for a judgment of acquittal, **affirms** the denial of the motion for a new trial and **affirms** Weathersby's sentence.

ENTERED FOR THE COURT


Michael R. Murphy
Circuit Judge