United States Court of Appeals
Fifth Circuit

**F I L E D**

**March 31, 2005**

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 03-11319

United States of America,

Plaintiff-Appellee,

VERSUS

Jeffery Lynn Southerland,

Defendant-Appellant.

Appeal from the United States District Court
For the Northern District of Texas

Before REAVLEY, HIGGINBOTHAM, and DeMOSS, Circuit Judges.

DeMOSS, Circuit Judge:

Defendant-Appellant Jeffrey Lynn Southerland pleaded guilty by written agreement to bank robbery, 18 U.S.C. § 2113(a), and access device fraud, 18 U.S.C. § 1029(a)(1), (c)(1)(A)(i). The district court sentenced Southerland to concurrent 96-month terms of imprisonment and three-year terms of supervised release. Southerland appeals, arguing the court erred by: (1) imposing a two-level enhancement for reckless endangerment during flight pursuant to United States Sentencing Guidelines § 3C1.2 when no nexus existed between the offense and the reckless endangerment

during flight; (2) double counting when applying the reckless endangerment enhancements to the offense level calculation of both the bank robbery offense and the access device fraud offense; and (3) imposing a sentence in violation of the Sixth Amendment under *United States v. Booker*, 125 S. Ct. 738 (2005).

Finding that the district court erred as a matter of law in its application of the then-mandatory guidelines, we VACATE Southerland's sentence and REMAND for resentencing.

## I.

On December 23, 2002, Southerland entered the SouthTrust Bank in Haltom City, Texas, and robbed the bank of $1,802. SouthTrust Bank's accounts and deposits were then insured by the Federal Deposit Insurance Corporation. Upon entrance, Southerland spoke with a representative about opening an account with a French passport and birth certificate. When he learned the documents were insufficient identification for opening an account, Southerland left the bank. He immediately reentered the bank, approached a teller, and passed her a note threatening the teller's life and demanding money from her drawer.[1]

Prior to the bank robbery, in August 2002, Southerland began

---

[1]According to the factual resume supporting the plea agreement, the note read: "This is a robbery. Follow these instructions and I will not use my gun. Die packs will get you killed. Do not turn around or look to anyone. Take all of the 100's and 50's from your drawer and place them on top of the notebook. Be calm and I will not hurt you. Act normal until I leave. You only have 15 seconds."

2

communicating with unknown individuals in Ukraine and England. Southerland wired money to these foreign individuals, who in turn mailed access devices — that is, credit cards — to Southerland. These illegally obtained cards displayed names and account numbers. At the request of the foreign individuals, Southerland opened bank accounts at Omni American Bank and at First Convenience Bank in the name of Bradley Carlton. Later, he purchased an encoder and began a scheme of purchasing access device account numbers, rather than the complete credit card, in order to encode the numbers onto the cards himself.

Southerland purchased false identification documents and manufactured Lockheed Martin employee identification cards as a second form of personal identification. He used the fraudulent credit cards to purchase items, including gift cards, at various stores. Southerland used at least two e-mail addresses for purposes of making purchases with the fraudulent credit cards and of receiving purchased merchandise. Southerland often recycled the same card by encoding new names and numbers onto the card, and typically he charged no more than $2,000 on a card before re-encoding it with a new name and account number. Due to Southerland's conduct, retailers lost, in total, approximately $26,373.17.

On February 24, 2003, Fort Worth police officers arrested Southerland, for theft and evading arrest. At the time of the arrest, Southerland possessed: approximately 28 stolen or

3

fraudulent access devices; three Wal-Mart gift cards obtained fraudulently; and one or more identification documents for four individuals who were real people (one of whom was dead) and eight individuals who were not real people. These documents included two birth certificates, one passport, seven military identification cards, six Lockheed Martin identification cards, six social security cards, and twenty state driver's licenses or identification cards. After his arrest, Southerland admitted verbally and in writing his fraudulent conduct to law enforcement. Based upon that conduct, Southerland pleaded guilty on August 29, 2003, to bank robbery and access device fraud. *See* 18 U.S.C. § 2113(a); 18 U.S.C. § 1029(a)(1), (c)(1)(A)(i).

The presentence report included additional information regarding Southerland's arrest and his conduct on February 24, 2003, prior to arrest that was not admitted by Southerland. The presentence report described: Fort Worth police attempted to initiate a traffic stop of Southerland who was operating a stolen rental car which he had obtained using fraudulent identification; Southerland fled from officers attempting to detain him; and after a vehicle and foot pursuit, officers arrested Southerland and a passenger. During Southerland's flight from the officers, the presentence report describes that he ran one traffic light and two stop signs and drove at a high rate of speed. Finally, the report indicates that, upon arrest, the officers charged Southerland with

4

theft and evading arrest.

The district court sentenced Southerland on December 5, 2003, based upon the probation officer's recommendations over Southerland's multiple objections. The probation officer determined that the offenses of conviction would be grouped separately. *See* U.S.S.G. § 3D1.2(d).[2] On the bank robbery conviction, the base offense level was 20 (Nov. 2003).[3] Two levels were added because under § 3C1.2 Southerland recklessly created a substantial risk of death or bodily injury in the course of fleeing law enforcement officers on February 24, 2003. *See* § 3C1.2. The subtotal offense level equaled 26 for the bank robbery offense. With respect to the access device fraud count, the probation officer assigned a base offense level of 6. *See* § 2B1.1(a)(2).[4]

---

[2]All further section citations refer to the 2003 United States Sentencing Guideline Manual, unless otherwise provided.

[3]*See* § 2B3.1(a). Several enhancements were recommended and applied that are not relevant to this appeal. For the bank robbery offense, those enhancements include: two levels added because the property of a financial institution was taken, § 2B3.1(b)(1), and two levels added because Southerland gave the victim bank teller a note that implied a threat of death, § 2B3.1(b)(2)(F).

[4]Enhancements to the access device fraud offense that are not at issue in this appeal include: four levels added because the fraud involved more than $10,000 and less than $30,000, § 2B1.1(b)(1)(C); two levels added because a substantial part of the offense was committed outside the United States, § 2B1.1(b)(2)(8)(B); two levels added for specific fraud characteristics, § 2B1.1(b)(9)(A)-(C); and Southerland's leadership role in the fraud triggered two additional levels, § 3B1.1(c).

5

And, again with respect to the access device fraud offense, the officer added two levels under § 3C1.2 based upon the reckless flight from law enforcement on February 24, 2003. The subtotal for the access device fraud offense level was 18. Southerland's resulting guideline range was 77 to 96 months' imprisonment.[5]

At the time of his sentencing, Southerland objected, arguing that the district court's application of the § 3C1.2 two-level enhancement was in error because: (1) in applying the enhancement to the bank robbery offense, the requisite nexus did not exist between the offense and the reckless endangerment during flight; and (2) the application of the enhancement to both offenses constituted impermissible double-counting. Southerland failed to object before the district court to § 3C1.2's application on the grounds that it violated his Sixth Amendment right to have facts which enhance his sentence determined beyond a reasonable doubt by a jury. *See Booker*, 125 S. Ct. at 756.

Southerland timely appealed, arguing that the district court erred in sentencing because: (1) the application of the § 3C1.2 enhancement requires a nexus between the flight from law enforcement and the bank robbery offense; (2) the court

---

[5]One multiple-count-adjustment unit for the bank robbery offense and one-half unit for the access device fraud offense were added. § 3D1.1(a)(3). Based upon those units, one level was added to the bank robbery subtotal, creating a combined adjusted offense level of 27. Three levels were subtracted for Southerland's acceptance of responsibility, resulting in a total offense level of 24. Southerland's criminal history score of eight placed him in a category of IV.

impermissibly double counted in applying § 3C1.2 to both the bank robbery and access device fraud offenses; and (3) determination of his reckless conduct in flight from law enforcement on February 24, 2003, was a fact, other than the fact of a prior conviction, not proven to a jury beyond a reasonable doubt and not admitted by Southerland that, by virtue of its enhancement of his sentence, violates his Sixth Amendment right to a jury trial.

## II.

In this case, we review a district court's legal conclusions and interpretations of the federal sentencing guidelines *de novo*, *United States v. Griffin*, 324 F.3d 330, 365 (5th Cir. 2003), because in the limited cases on appeal that challenge as a matter of law the propriety of the district court's application of the pre-*Booker* mandatory sentencing guidelines, this independent standard of review survives *Booker*'s effect on standards of review that will apply to the advisory application of the guidelines. *United States v. Villegas*, No. 03-21220, 2005 WL 627963 (5th Cir. filed Mar. 17, 2005), at *4-5.[6]

---

[6]In *Villegas*, this Circuit addressed the case where a defendant failed to raise before the district court both a challenge to the propriety of the guideline application as well as a *Booker* challenge. 2005 WL 627963, at *2. Here, Southerland raised his misapplication challenge to the district court but did not raise a *Booker* challenge or object to the enhancement on the basis of his Sixth Amendment rights. In Southerland's case, the misapplication challenge and *Booker* challenge on appeal both stem from the district court's application of § 3C1.2 on the basis of facts described solely in the presentence report and not admitted by Southerland.

The sentencing guidelines provide a two-level enhancement for obstructionist conduct like that described in Southerland's presentence report. "If the defendant recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer, increase by 2 levels." § 3C1.2.

Southerland argued, both in his written objections raised to the district court and at oral argument prior to sentencing, that a nexus is required between the conduct triggering § 3C1.2's application and the underlying offense of conviction. He argued the requisite nexus is lacking here between the bank robbery offense and the reckless endangerment conduct described in the presentence report.

Southerland urges this Court to read § 3C1.2 in the larger context of the guidelines. Section 1B1.3 describes "Relevant Conduct (Factors that Determine the Guideline Range)." In relevant part, subsection (a) reads:

> (a) <u>Chapters Two (Offense Conduct) and Three (Adjustments).</u> Unless otherwise specified, . . . (iv) adjustments in Chapter Three, shall be determined on the basis of the following:
> (1) (A) all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant; . . .
> that occurred during *the commission of the offense of conviction*, in preparation for *that* offense, or in the course of attempting to avoid detection or responsibility for *that* offense. . . .

§ 1B1.3(a) (emphasis added).

Thus, in determining adjustments under Chapter Three, including the reckless endangerment enhancement at issue here, courts must evaluate the acts or omissions of the defendant that occurred during the commission of the offense, the preparation for the offense of conviction, or "the course of attempting to avoid detection or responsibility for" the offense of conviction. *Id*. Such a requirement requires courts to engage in a familiar analysis, that is, the discrimination between relevant and irrelevant conduct.

In support of this reading of § 3C1.2, Southerland relies upon *United States v. Duran*, 37 F.3d 557 (9th Cir. 1994). Duran was convicted of armed robbery of a bank in Salem, Oregon. *Id*. at 559. Four days after the robbery, he engaged in "a 30 minute car chase through agricultural fields, a residential yard, and several ditches and fences." *Id*. The chase resulted in Duran's arrest by state officials, and he was later transferred to federal authorities for prosecution on the bank robbery offense. *Id*. At Duran's sentencing, the court imposed § 3C1.2's enhancement, finding the flight to be part of the same scheme and course of conduct to avoid apprehension for the bank robbery. *Id*. at 560. Duran appealed, arguing that a nexus is required between the offense and the reckless endangerment in order for § 3C1.2 to apply and that the facts of his offense and flight from law enforcement were insufficiently connected to bear the enhancement. *Id*. at 559-

9

60. Because the government failed to respond to the argument, the Ninth Circuit assumed, without holding, for purposes of analysis that the nexus was required. *Id*. But the court rejected Duran's proposed factors for consideration and instead announced a causation test for determining whether the requisite nexus is met. *Id*. at 560. "A sufficient nexus exists to warrant enhancement under U.S.S.G. § 3C1.2 if a substantial cause for the defendant's reckless escape attempt was to avoid detection for the crime of conviction." *Id*. The factors relevant to this causation determination were: (1) "the state of mind of the defendant when he recklessly attempted to avoid capture"; and, to a lesser degree, (2) temporal and geographic proximity. *Id*.

In Duran's case, the connection of the offense to the flight from officers in time and geography were not determinative because the court relied upon the first factor, Duran's state of mind, evinced by his statement made earlier the same day that he had stolen a car and robbed a bank. *Id*. The court found this statement to indicate the causation of the reckless escape attempt. *Id*. Then, finding the nexus satisfied on the relevant facts and the imposition of the enhancement not clearly erroneous, the court affirmed Duran's sentence. *Id*.

Other Circuits, in unpublished and nonprecedential opinions, have declined to hold that § 3C1.2 requires a nexus between the underlying offense and the reckless endangerment during flight, and

10

the government relies upon these cases. *See United State v. Lykes*, 71 Fed. Appx. 543 (6th Cir. 2003)(unpublished); *United States v. Green*, 242 F.3d 391, 2001 WL 50754 (10th Cir. 1999) (unpublished). We find the reasoning offered in those opinions and in the government's argument here unpersuasive in light of § 1B1.3's express requirement that Chapter Three adjustments be based upon acts or omissions occurring during the offense of conviction, the preparation for the offense of conviction, or the course of attempting to avoid detection or responsibility for the offense of conviction. The language of the guidelines specifically requires the connection of the enhancement not only to commission, preparation, or evasion, but also to the specific offense of conviction. *See* § 1B1.3(a)(1). The Commission's language choices demonstrate this necessity: Chapter Three adjustments are to be determined on the basis of acts or omissions "that occurred during *the commission of the offense of conviction*, in preparation for *that* offense, or in the course of attempting to avoid detection or responsibility for *that* offense." § 1B1.3(a)(1) (emphasis added). Unlike the use of a general article, the use of "that" to modify offense refers to the specific offense described immediately prior, the "offense of conviction." Thus, we disagree with the government's argument that the Commission might have expressed, but did not, in § 3C1.2 a connection between the enhancement and the offense of conviction. We also disagree with the Ninth Circuit

11

that a showing of causation is required. The government need not demonstrate that the underlying offense caused either the reckless endangerment during flight or the flight itself, only that a sufficient nexus lie between the underlying offense and the reckless flight.

In order to establish that the defendant's sentence should be enhanced under § 3C1.2, the government must show that the defendant (1) recklessly, (2) created a substantial risk of death or serious bodily injury, (3) to another person, (4) in the course of fleeing from a law enforcement officer, (5) and that this conduct "occurred during the commission *of the offense of conviction*, in preparation for *that* offense, or in the course of attempting to avoid detection or responsibility for *that* offense." § 1B1.3 (emphasis added); § 3C1.2. This fifth element, required by § 1B1.3, is the source of the nexus requirement that Southerland urges is lacking in his case.

Here, Southerland's reckless endangerment conduct is insufficiently connected to the bank robbery conviction because the government failed to show that the flight occurred in the course of attempting to avoid detection or responsibility for that specific offense. Under these facts, the other options — during commission of the offense of conviction or in preparation for the offense of conviction – do not bear on the question because Southerland committed the offense or conviction on a single day, December 23,

2002, a full two months before the February 24, 2003, flight. Thus, the discrete, noncontinuing offense was completed prior to the chase.

In determining whether the flight and the offense of conviction are connected sufficiently, we look primarily to any evidence of the defendant's state of mind while fleeing. *See Duran*, 37 F.3d at 560. According to the presentence report, at the time of the flight Southerland and his passenger drove a stolen rental car. Southerland's passenger possessed the following substances: .52 grams of heroin, 1.82 grams of Alprazolam, and .419 grams of cocaine.[7] The most compelling evidence of Southerland's state of mind during the flight is the evidence that while fleeing he was in the midst of the commission of several crimes. That Southerland then drove a stolen car containing controlled substances and illegal drugs is compelling evidence that he evaded officers in order to avoid detection and responsibility for the offense of either automobile theft or drug possession. Neither of the offenses that were ongoing at the time of the chase related in any way to the bank robbery. Indeed, no evidence linking Southerland to the bank robbery was discovered in the car. The presentence report's description of the facts related to the flight supports the conclusion that Southerland's state of mind in evading

---

[7]She subsequently pleaded guilty to a possession charge in a separate proceeding.

13

law enforcement related to the ongoing offenses of automobile theft and drug possession, not to bank robbery.

In evaluating the fifth factor in the application of § 3C1.2, we also examine the temporal and geographic proximity of the reckless endangerment during flight to the offense of conviction, as factors that supplement the inquiry into the defendant's state of mind. *See id*. Here, the temporal connection, two months between the offense and the flight, is too attenuated to support the application of § 3C1.2 in light of the evidence indicating that Southerland was fleeing to avoid responsibility for possession of a stolen car and possession of illegal drugs. It is true that both the bank robbery offense and reckless endangerment occurred generally in the Fort Worth area, but a general geographic proximity is insufficient on its own to create the requisite nexus when the more primary factor of the defendant's state of mind in fleeing and the additional factor of temporal proximity together indicate the absence of a connection between offense and evasion.

The government argues that a defendant fleeing from law enforcement for one offense is also necessarily attempting to evade responsibility for any other offenses he has committed. According to the government, this principle brings the flight within the language of § 1B1.3 permitting Chapter Three enhancement for "all acts and omissions committed, aided, abetted . . . or willfully caused by the defendant." *See* § 1B1.3. But the government's

14

argument fails to account for the guidelines' express provision that the adjustment apply to such conduct or omissions *for that offense*. The Guideline Commission might have expressly included "any offense" or "all offenses" or any number of broader descriptions of relevant conduct. Instead, the Commission expressly modified the particular conviction to which an adjustment might apply, and in light of this provision, we agree with Southerland that his February 24, 2003, flight from Fort Worth officers is insufficiently connected to the bank robbery offense to permit a two-level enhancement for that offense under § 3C1.2.

A nexus also lacks between the access device fraud offense, as alleged in the controlling information, and the reckless endangerment. Again, to make this determination, we look primarily to the evidence of the defendant's state of mind while fleeing. Then, we evaluate the temporal and geographic proximity between the offense and the reckless endangerment during flight. As indicated above, Southerland and his passenger were, on the basis of the facts alleged in the presentence report, fleeing from law enforcement on February 24, while driving a stolen car and possessing illegal drugs. On the access device fraud count, Southerland was charged only with the one time use of a single counterfeit access device, a FleetBank Visa counterfeit card, on January 11, 2003, more than a month prior to Southerland's flight. The record, including the presentence report, fails to connect the

15

access device offense as charged in the information with the February 24 flight. Although the car Southerland drove while evading Fort Worth officers contained fraudulent credit cards, there is nothing in the record to connect the cards in the car at the time of the arrest with the single, specific fraudulent access device named in the information as the sole basis for that offense of conviction. Also, as discussed above, no temporal proximity, sufficient to overcome evidence of Southerland's state of mind as fleeing other crimes rather than this offense, coheres between this offense and the flight from law enforcement. And, on this count as on the bank robbery count, the geographic proximity is also insufficient to outweigh the evidence that Southerland fled an offense or offenses other than the single use of a fraudulent access device charged here. Therefore, the district court also erred in applying the § 3C1.2 enhancement to the access device fraud count.

Thus, the district court erred in adjusting and imposing Southerland's sentence. In the absence of the erroneous application of the § 3C1.2 enhancement, the applicable sentencing range would have been lower than the range the district court considered, and the maximum sentence would have been lower than the maximum sentence that the district court imposed. On such a record, remand is appropriate. *See Williams v. United States*, 503 U.S. 193, 203 (1992) (citing Fed. R. Crim. Proc. 52(a)); *United*

16

*States v. Barrera-Saucedo*, 385 F.3d 533, 536–37 (5th Cir. 2004)
(citing *Williams*, 503 U.S. at 203).

### III.

Because we must vacate Southerland's sentence due to the misapplication of § 3C1.2, we need not reach his argument, raised for the first time on appeal, that the district court erred in sentencing by violating *Booker* or his argument that the district court erred by double counting when it applied the § 3C1.2 reckless endangerment enhancement to both the bank robbery and fraud counts.

After careful review of the entire record, the briefing, and oral arguments, and for the foregoing reasons, we VACATE the district court's sentencing of Southerland and REMAND for resentencing in accordance with this opinion.

17