FILED
United States Court of Appeals
Tenth Circuit

March 5, 2013

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

RICHARD GRAY,

Defendant - Appellant.

No. 12-8043

(D. Wyoming)

(D.C. No. 2:11-CR-00272-ABJ-3)

---

ORDER AND JUDGMENT[*]

---

Before **HARTZ**, **ANDERSON**, and **MURPHY**, Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist in the determination

of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is

therefore ordered submitted without oral argument.

Defendant and appellant, Richard Wayne Gray, appeals his sentence of 135

months' imprisonment, imposed following his plea of guilty to one count of

---

[*]This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 32.1.

conspiracy to possess with intent to distribute methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A) and 846, and one count of possession with intent to distribute methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C). Finding no abuse of discretion in the district court's calculation of Mr. Gray's sentence, we affirm.

## BACKGROUND

In March of 2011, law enforcement authorities seized approximately eleven grams of methamphetamine from an individual who claimed to have received it from Mr. Gray. The authorities learned subsequently that Mr. Gray distributed methamphetamine to a large number of people in the Sheridan, Wyoming, area.

On April 30, 2011, Wyoming authorities, with the help of a confidential informant, conducted a controlled purchase of 5.6 grams of methamphetamine from Mr. Gray. Subsequently, on May 6, 2011, the Sheridan County Sheriff's Office pulled over Mr. Gray's car in a traffic stop. During a search of Mr. Gray and his car, officials found a large amount of currency ($2,280) in his pants pocket, as well as a digital scale and a cellular phone. When he was interviewed by the authorities, Mr. Gray admitted to being involved in a fairly substantial methamphetamine drug trafficking enterprise. In fact, he said he was so successful at selling methamphetamine that he had become the primary distributor of methamphetamine for his source in Buffalo, Wyoming.

Mr. Gray further informed authorities that he had sold three pounds of methamphetamine and made more than $100,000 over the last eight months. He also said that he paid to his supplier $1,700 per ounce of methamphetamine and that he sold his meth in Sheridan, Buffalo and Gillette, Wyoming, as well as Billings, Montana. Mr. Gray claimed to have nearly one hundred customers.

After this interview on May 6, 2011, law enforcement personnel released Mr. Gray, and he agreed to continue to contact them to advise them of his activities involving his methamphetamine dealings.

On September 28, 2011, several of Mr. Gray's sources of methamphetamine were arrested. Unfortunately, information identifying Mr. Gray as a confidential informant appeared in a Wyoming newspaper a few days after these arrests.

As a result of this inadvertent revelation, the Wyoming Division of Criminal Investigation ("DCI") agents, in particular DCI Special Agent Quarterman, attempted to find Mr. Gray. Given that his cooperation had been made public, they wanted to arrest him based on the probable cause that developed during their investigation into Mr. Gray's and his associates' methamphetamine trafficking activities, and they also thought he would be safest in custody.

Accordingly, at approximately 3:00 p.m. on October 3, 2011, Mr. Gray was stopped (at the request of the DCI) by a deputy of the Johnson County Sheriff's Office in Buffalo, Wyoming. Several DCI agents also arrived at the stop, with

their vehicle emergency lights and sirens on. The deputy also had his dashboard video camera on and recording.

When the law officers asked Mr. Gray to step out of his car, he refused and then drove off at a high rate of speed. The deputy's video camera captured the entire chase. It was played at the sentencing hearing and is included in the record on appeal. That video was supplemented at the sentencing hearing by the testimony of the other agents involved in the chase, including DCI Agent Quarterman.

That evidence showed that Mr. Gray drove at first along a residential street and past a school, traveling at approximately 50 mph. He then drove along more rural roads, running past a stop sign where he nearly struck another vehicle broadside. He subsequently drove off the road, crashed through a fence and drove onto a high school soccer field. Mr. Gray drove his car off the soccer fields, around the school, going the wrong way on a one-way bus route, and then drove towards an officer's vehicle which was attempting to block Mr. Gray's car. When it appeared Mr. Gray would not stop, the officer moved his car, and Mr. Gray continued along a rural highway at speeds varying from approximately 50 mph to 70 mph. The video shows that his car veered onto the wrong side of the road

frequently, causing oncoming cars to have to move off to the side of the road.

Mr. Gray's car finally veered off the road, struck a fence and then stopped.[1]

Mr. Gray then got out of his car (actually fell out of his car, due to injuries he had sustained) and was taken away in an ambulance. He admitted to being in possession of methamphetamine at the time the authorities first contacted him that day and tried to arrest him.[2]

Mr. Gray eventually pled guilty to the two counts described above. In preparation for sentencing under the advisory United States Sentencing Commission, Guidelines Manual ("USSG"), the United States Probation Office

---

[1]The district court, after watching the video of the chase and hearing testimony, found as follows, in part:

> And he [Mr. Gray] suddenly departed at a high rate of speed, passed a grade school where the parents were parked alongside of the boundary of the grade school waiting to pick up their young students, at speed through that school zone, traveling, then narrowly missing vehicles which pulled off the side of the road . . . .
>
> [T]he very close call occurred shortly before, very shortly before the defendant's vehicle crashed through the chain-link fence at Johnson County high school, proceeded across the [soccer] field in attempts to elude the arrest that he knew was coming. Eventually contact was again made with the vehicle which proceeded out on a more rural and less trafficked area, pieces of the vehicle falling off of it. . . . Officer Quarterman indicated that the vehicle was traveling about 50 miles an hour by that time because of mechanical problems that it was having. However, it repeatedly was driving over the double yellow line on curves, on hills which were blind at that point, and then swerving back and forth across the center line of the road.

Tr. of Sentencing Hr'g at 42, R. Vol. 3 at 82-83.

[2]Mr. Gray had apparently tried to eat the methamphetamine he had with him in his car.

prepared a presentence report ("PSR"). The PSR computed a base offense level of 32, then added two levels for reckless endangerment in the course of fleeing, pursuant to USSG §3C1.2, and deducted three levels for acceptance of responsibility, resulting in a total adjusted level of 31. With a criminal history category of IV, the PSR recommended an advisory sentencing range of 151-188 months.

Mr. Gray made several objections to the PSR, including an objection to the reckless endangerment enhancement and to the criminal history category, claiming that category IV over-represented his criminal history. The district court agreed with his objection to the criminal history categorization, and ultimately assigned Mr. Gray a criminal history category of III, which, with a total adjusted level of 31, yielded an advisory sentencing range of 135-168 months. The court then sentenced Mr. Gray to 135 months. The district court refused to alter the two-level enhancement for reckless endangerment.

This appeal followed, in which Mr. Gray challenges that two-level enhancement. His argument is two-fold: (1) "his conduct driving at varying speeds to avoid the police was not so dangerous as to create a substantial risk of death or serious bodily injury"; and (2) "there was not a nexus between this car chase and his relevant conduct." Appellant's Br. at 15.

**DISCUSSION**

We review sentences for reasonableness under a deferential abuse-of-discretion standard. See United States v. Alapizco-Valenzuela, 546 F.3d 1208, 1214 (10th Cir. 2008). "'Reasonableness review is a two-step process comprising a procedural and a substantive component.'" Id. (quoting United States v. Verdin-Garcia, 516 F.3d 884, 895 (10th Cir. 2008)). See Gall v. United States, 552 U.S. 38, 51 (2007). "Procedural review asks whether the sentencing court committed any error in calculating or explaining the sentence." Alapizco-Valenzuela, 546 F.3d at 1214. In determining whether the district court correctly calculated the applicable Guidelines range, "we review factual findings for clear error and legal determinations de novo." United States v. Wilken, 498 F.3d 1160, 1169 (10th Cir. 2007) (quoting United States v. Kristl, 437 F.3d 1050, 1054 (10th Cir. 2006) (per curiam)). Mr. Gray appears to challenge only the procedural reasonableness of his sentence, as he argues the district court erred in applying the reckless endangerment enhancement to the calculation of his sentence.

USSG §3C1.2 provides for a two-level enhancement "[i]f the defendant recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer."[3] A defendant

---

[3]We note that the PSR referred to the adjustment under §3C1.2 as an "Adjustment for Obstruction of Justice." Section 3C1.2, however, is entitled "Reckless Endangerment During Flight"; it is the preceding provision, §3C1.1, which is entitled "Obstructing or Impeding the Administration of Justice." We

(continued...)

acts recklessly for purposes of this enhancement when he "was aware of the risk created by his conduct and the risk was of such a nature and degree that to disregard that risk constituted a gross deviation from the standard of care that a reasonable person would exercise in such a situation." United States v. Conley, 131 F.3d 1387, 1389 (10th Cir. 1997).

A panel of our court has held that a brief high-speed chase qualifies for the reckless endangerment enhancement. See, e.g., United States v. Moreira, 317 Fed. Appx. 745, 747 (10th Cir. 2008) (unpublished) (finding a reckless endangerment enhancement appropriate when, upon defendant's arrival in his car, "police officers in unmarked patrol cars activated their lights and attempted to blockade his vehicle. [Defendant] managed to evade the blockade and drove away. Officers pursued him for a short distance until they decided to cease their high-speed chase due to concern for public safety");[4] United States v. Wilfong, 475 F.3d 1214, 1216 (10th Cir. 2007) (finding reckless endangerment when a defendant "drove off at a high rate of speed when the officers got out of their patrol cars. A chase ensued, during which the female driver drove in a reckless fashion, and both the female driver and her male passenger threw papers out of the vehicle. Officers eventually stopped the suspects using 'stop sticks' to blow

_____

[3](...continued)
follow the nomenclature as stated in the Guidelines themselves.

[4]We note that unpublished decisions have no precedential value, but we cite it here because we agree with its reasoning.

-8-

out the tires of the suspects' vehicle"); Conley, 131 F.3d at 1389-90 ("The evidence before the court reveals that the defendants engaged in a high-speed car chase with law enforcement officials on an icy road, passed two rolling road blocks, and attempted to ram a police officer's vehicle. These actions involved a known risk of danger to others, and constituted a gross deviation from the standard of care that a reasonable person would have exercised in that situation.").

We have no problem concluding that the district court did not clearly err in deciding that the circumstances of the high-speed flight in which Mr. Gray engaged constituted reckless endangerment under USSG § 3C1.2.[5] We turn, now, to Mr. Gray's second argument—whether a "nexus" is required between his flight and the crimes of conviction and, if so, whether there was such a nexus.

Mr. Gray argues that there is no "nexus" between the high-speed chase and the crime of conviction. The district court stated, with regard to the nexus issue, as follows:

> The nexus issue is an interesting one. The admissions made by the defendant certainly would indicate a nexus in this case in that he at the time the arrest was occurring, regardless of purpose, he was holding methamphetamine at that point, contrary to his statement that he or the suggestion made here that he had not used or been involved

---

[5]We note that the Sixth Circuit has stated that "[b]ecause the 'question of what constitutes endangerment is a mixed question of law and fact . . . [that] is highly fact-based,' we give 'significant deference to the district court." United States v. Dial, 524 F.3d 783, 785 (6th Cir. 2008) (quoting United States v. Hazelwood, 398 F.3d 792, 796 (6th Cir. 2005)).

with methamphetamine for several weeks prior to the last contact with Agent Quarterman.

And so I conclude that the decision that was made by the probation officer to impose an adjustment pursuant to guideline 3C1.2 is an appropriate adjustment.

Tr. of Sentencing Hr'g at 45, R. Vol. 3 at 84-85.

The question of whether the government must prove, by a preponderance of the evidence, that a nexus exists between the defendant's high-speed chase and his crimes of conviction has generated some uncertainty in our circuit and others. We have said that "the Tenth Circuit has never required a nexus under §3C1.2." United States v. Davidson, 283 Fed. Appx. 612, 614 (10th Cir. 2008) (unpublished). Our case law has not, however, been completely consistent. As we stated in Davidson:

> First, we rejected the argument that the reckless endangerment must occur during the flight to avoid arrest for the particular offense of conviction. United States v. Green, No. 98-5256, 2001 WL 50754, *2 (10th Cir. 1999) (unpublished). Instead, the enhancement is simply part of the relevant conduct a district court may consider under §1B1.3 in determining the appropriate offense level and criminal history. Second, another unpublished Tenth Circuit case held that a district court did not commit plain error in concluding that §3C1.2 does not contain a nexus requirement, reasoning that even though §1B1.3 may suggest a nexus, it does not unequivocally state such a requirement and, at that time, no circuit had required a nexus. United States v. Weathersby, 89 Fed. Appx. 683, 689 (10th Cir. 2004) (unpublished).

Id. at 614.

We then noted that the question of whether "section §3C1.2 [requires a nexus] has also received varying treatment by the circuits." Id. Accordingly, the

Ninth Circuit has assumed without deciding that §3C1.2 requires a nexus between the crime of conviction and the reckless endangerment.  See United States v. Duran, 37 F.3d 557, 559-60 (9th Cir. 1994).  The Sixth Circuit initially decided, in an unpublished opinion, that no nexus was required, see United States v. Lykes, 71 Fed. Appx. 543, 553 n.7 (6th Cir. 2003) (unpublished), "but then reversed itself in a published opinion concluding that the section [§3C1.2] does have a nexus requirement."  Davidson, 283 Fed. Appx. at 615 (citing United States v. Dial, 524 F.3d 783, 787 & n.2 (6th Cir. 2008)).  The Fifth Circuit explicitly requires a nexus.  United States v. Southerland, 405 F.3d 263, 268 (5th Cir. 2005).[6]  In an unpublished Fourth Circuit case, the court assumed there was a nexus requirement without analysis.  United States v. Scearcy, 108 F.3d 1374 (4th Cir. 1997) (unpublished).  A recent district court case made the same assumption.  Trent v. United States, 2012 WL 157288, at *5 (E.D.N.Y. Jan. 17, 2012).

Nonetheless, our circuit has never required a nexus; indeed, we explicitly stated in Davidson that "[w]e have doubts whether there is a nexus requirement since reckless endangerment may simply be part of relevant conduct under

---

[6]In an earlier unpublished decision, the Fifth Circuit suggested that no such nexus requirement existed:  "the plain language of U.S.S.G. §3C1.2 seems not to require a direct nexus between the crime of conviction and the defendant's acts of reckless endangerment.  Nor can we glean from a literal reading of the guideline's commentary the sentencing commission's intent to limit application of the enhancement in such a manner."  United States v. Hodges, 190 F.3d 537 (5th Cir. 1999) (unpublished).  But then the court assumed that there was a nexus requirement and found a sufficient nexus for application of the enhancement.

§1B1.3, but we need not weigh in on the question today." Davidson, 283 Fed. Appx. at 615. We take that same course here. Rather than delving into the nexus question now, we will assume, without deciding, that a nexus must be demonstrated.

We conclude that such a nexus was clearly demonstrated in this case. The Fifth Circuit in Southerland developed a five-part test for determining whether the USSG §3C1.2 enhancement should apply. With respect to the nexus requirement the court stated the government must show that the reckless conduct "occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense. Southerland, 405 F.3d at 268 (quoting USSG §1B1.3). Further, "the Southerland court looked 'primarily to any evidence of the defendant's state of mind while fleeing'" Dial, 524 F.3d at 787 (quoting Southerland, 405 F.3d at 268). "To supplement the inquiry into the defendant's state of mind, the Fifth Circuit 'examine[d] the temporal and geographic proximity of the reckless endangerment during flight to the offense of conviction.'" Id. (quoting Southerland 405 F.3d at 269).

Here, law enforcement personnel became aware of Mr. Gray's drug-trafficking conduct no later than May 2011. From that time onward, he was, in essence, a confidential informant for the police. When Mr. Gray's identity was inadvertently released in late September, the police sought him out shortly

-12-

thereafter both to protect him and, presumably, to charge him for his drug trafficking activities. At the time of the high-speed chase, Mr. Gray had methamphetamine in his possession (i.e., he continued to be engaged in the drug-related conduct of which the police were aware and for which he was acting as a confidential informant.). It defies belief to think that Mr. Gray was not aware of the fact that the police were stopping him to detain him for his methamphetamine-related activities. It is accordingly quite clear that there was a nexus between the crimes of conviction and Mr. Gray's high-speed chase.

We accordingly conclude that the district court correctly applied the USSG §3C1.2 enhancement when calculating Mr. Gray's sentence. There was therefore no procedural error in the calculation of that sentence and it is procedurally reasonable. To the extent Mr. Gray suggests that his sentence is substantively unreasonable (and he makes no specific argument about this), we find it is substantively reasonable. And, as a within-Guidelines sentence entitled on appeal to a presumption of substantive reasonableness, see Rita, 551 U.S. at 347, we conclude Mr. Gray has failed to rebut that presumption.

## CONCLUSION

For the foregoing reasons, we AFFIRM Mr. Gray's sentence.

ENTERED FOR THE COURT

Stephen H. Anderson
Circuit Judge