# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
April 8, 2021

Lyle W. Cayce
Clerk

No. 19-40292

UNITED STATES OF AMERICA,

*Plaintiff — Appellee,*

*versus*

ROBERT BEN DECKERT,

*Defendant — Appellant.*

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 1:18-CR-00019

Before DENNIS, SOUTHWICK, and HO, *Circuit Judges.*

JAMES C. HO, *Circuit Judge*:

The U.S. Sentencing Guidelines provide for a longer sentence—in the form of a two-level enhancement—when a defendant not only commits a crime, but also recklessly endangers others while fleeing a law enforcement officer in hopes of evading arrest for that crime.  U.S.S.G. § 3C1.2.

This appeal concerns the application of the two-level reckless endangerment enhancement under U.S.S.G. § 3C1.2 to a certain category of offenses known as "groupable" offenses.  When it comes to certain groupable offenses such as the drug trafficking offense at issue in this case,

we apply the reckless endangerment enhancement even when the defendant is *not* convicted for the specific crime from which he recklessly flees—so long as the crime for which he *is* convicted is part of the "same . . . common scheme or plan."  U.S.S.G. § 1B1.3(a)(2).

Because the facts of this case demonstrably satisfy the "same common scheme or plan" standard, we affirm the district court's application of the two-level enhancement.

## I.

Robert Ben Deckert met a Hardin County officer investigating a suspicious trailer found on private property.  Deckert told the officer he did not own the trailer but was using it with the owner's permission.  Deckert then left the premises.  After determining that the trailer was stolen, officers investigated and found 530 grams of methamphetamine and five firearms in the trailer.  A Hardin County court issued a warrant for Deckert's arrest.

Three days later, a Lumberton police officer saw Deckert speeding on his motorcycle through a business parking lot.  Deckert refused to pull over and led the officer on a high-speed chase in both residential and business areas of Lumberton before he crashed.  The officer searched Deckert and found 615 grams of methamphetamine, a meth pipe, and five syringes, two of which were full of methamphetamine.  Police placed him under arrest.

Deckert waived his rights to an attorney.  He admitted that he trafficked in methamphetamine and that he had seen and handled at least four of the firearms found in the trailer.  A grand jury indicted Deckert on two counts of possession with intent to distribute methamphetamine and one charge of carrying a firearm during a drug trafficking offense.  Deckert pleaded guilty to the first methamphetamine charge as well as the firearm charge.

The presentence report included a two-level upward adjustment for reckless endangerment during flight under U.S.S.G. § 3C1.2. Deckert objected to the enhancement on the ground that his reckless flight was related only to the second drug trafficking count, and therefore not related to the offense of conviction. The district court rejected his argument. The court instead concluded that the two drug offenses were part of the same "common scheme or plan," and therefore subject to the two-level enhancement according to subsection (a)(2) of U.S.S.G. § 1B1.3.

Deckert appeals the sentencing enhancement.

## II.

Deckert objected below and preserved his argument on appeal, so we review the district court's factual findings for clear error and its interpretation of the Guidelines de novo. *United States v. Halverson*, 897 F.3d 645, 651 (5th Cir. 2018). A district court's determination of relevant conduct is reviewed for clear error. *United States v. Barfield*, 941 F.3d 757, 761 (5th Cir. 2019).

A defendant's relevant conduct is the conduct that a district court considers when determining whether a sentencing enhancement is appropriate. Section 1B1.3 of the Sentencing Guidelines provides different definitions of relevant conduct based on the defendant's offense of conviction.

It takes careful parsing—including consideration of the overall context of U.S.S.G. § 1B1.3—to understand why the district court was ultimately correct under subsection (a)(2) that the two-level enhancement applies here. So the relevant language from U.S.S.G. § 1B1.3 is copied here in full—with the language most relevant to this appeal in italics. It provides that the sentencing court shall take into consideration:

(a) . . .

   (1)  (A)  *all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant*; and

       (B)  in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all acts and omissions of others that were—

          (i)  within the scope of the jointly undertaken criminal activity,

          (ii)  in furtherance of that criminal activity, and

          (iii)  reasonably foreseeable in connection with that criminal activity;

*that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense*;

   (2)  solely with respect to offenses of a character for which § 3D1.2(d) would require grouping of multiple counts, *all acts and omissions described in subdivisions (1)(A) and (1)(B) above that were part of the same course of conduct or common scheme or plan as the offense of conviction* . . . .

U.S.S.G. § 1B1.3 (emphasis added).

Under subsection (a)(1)(A), a defendant's relevant conduct generally consists of all acts and omissions that he committed or caused during, in preparation for, or while covering up the offense for which he was convicted. U.S.S.G. § 1B1.3(a)(1)(A). And under subsection (a)(1)(B), if the defendant

has a partner in crime, the partner's conduct can count, too.  U.S.S.G. § 1B1.3(a)(1)(B).

Importantly, it is the trailing (or hanging) clause of subsection (a)(1) that makes clear that either of these two categories of conduct must have "occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense."  Because this clause trails behind the text of subsections (a)(1)(A) and (a)(1)(B), we treat it as located within subsection (a)(1)—and not within either subsections (a)(1)(A) or (a)(1)(B). *See United States v. Ainabe*, 938 F.3d 685, 691 (5th Cir. 2019) (noting that the trailing clause "belongs more generally to § 1B1.3(a)(1)") (quoting *United States v. Valenzuela–Contreras*, 340 F. App'x 230, 235 n.5 (5th Cir. 2009)).

As we shall see, the location of the trailing clause in subsection (a)(1)—rather than within either subsection (a)(1)(A) or (a)(1)(B)—matters to the proper resolution of this appeal.  That is because this appeal concerns the application of subsection (a)(2), not subsection (a)(1)—and because subsection (a)(2) refers specifically to subsections (a)(1)(A) and (a)(1)(B), and not more generally to everything in subsection (a)(1).

Subsection (a)(2) defines relevant conduct "solely with respect to offenses of a character for which § 3D1.2 would require grouping of multiple counts."  U.S.S.G. § 1B1.3(a)(2).  For those types of offenses, the Guidelines instruct courts to sentence a defendant based on how many times the defendant has been charged with that conduct.  U.S.S.G. § 3D1.2.  For example, if a defendant is charged with four counts of possessing a controlled substance, the court must group those four counts together and then calculate a single, combined offense level that will then be used to calculate the sentence for each count.  Because the point of grouping offenses is to take into account multiple, similar offenses, the Guidelines naturally employ a

different definition of relevant conduct for groupable offenses. U.S.S.G. § 1B1.3(a)(2).

Section 1B1.3(a)(2) defines the defendant's relevant conduct for a groupable offense as "all acts and omissions described in subdivisions (1)(A) and (1)(B) above that were part of the same course of conduct or common scheme or plan as the offense of conviction." *Id.* Thus, when a defendant is convicted of a groupable offense, courts should look to all acts and omissions that were part of a similar course of conduct or common scheme as the offense of conviction.

Accordingly, section 1B1.3(a)(2) presents the following question: Does the reference to "all acts and omissions described in subdivisions (1)(A) and (1)(B) above" incorporate the trailing clause of subsection (a)(1), which requires that the acts and omissions occur during, in preparation for, or while covering up the offense of conviction? We are not the first to note this ambiguity. *See*, *e.g.*, *United States v. Hodge*, 805 F.3d 675, 682–83 (6th Cir. 2015) ("There is an ambiguity as to whether the phrase in (a)(2)—'all acts and omissions described in subdivisions (1)(A) and (1)(B) above'—refers to (a)(1)(A) and (a)(1)(B) *with* the trailing clause or *without* the trailing clause.") (quoting U.S.S.G. § 1B1.3(a)(2)).

A careful reading of subsection (a)(2) shows that it does *not* incorporate the trailing clause of subsection (a)(1)—but rather, only the text of subsections (a)(1)(A) and (a)(1)(B). As the Seventh Circuit has explained, "[s]ubsection (a)(2) of the guideline specifically incorporates (a)(1)(A) and (a)(1)(B) but says nothing about the trailing clause. In contrast, subsection (a)(3) of the guideline refers to *all* of (a)(1) and not merely subsections (a)(1)(A) and (a)(1)(B)." *United States v. Johnson*, 347 F.3d 635, 639 (7th Cir. 2003) (emphasis added). *See also* U.S.S.G. § 1B1.3(a)(3) (referring to "all harm that resulted from the acts and omissions specified in subsections (a)(1)

and (a)(2) above"). So because subsection (a)(2) references only subsections (a)(1)(A) and (a)(1)(B)—and not subsection (a)(1) as a whole—and the only difference between those provisions is the trailing clause, subsection (a)(2) must not incorporate the trailing clause. *See Ainabe*, 938 F.3d at 691 (noting that if subsection (a)(2) did include the trailing clause, "(a)(2) would have referred broadly to section (a)(1)") (quoting *Valenzuela–Contreras*, 340 F. App'x at 235 n.5).

Moreover, this reading makes sense. To incorporate subsection (a)(1)'s requirement that the act or omission occur during, in preparation for, or while covering up the offense of conviction would render subsection (a)(2)'s definition of relevant conduct as a "common scheme or plan" superfluous. Furthermore, groupable offenses are grouped together because they are of a similar character. *See* U.S.S.G. § 3D1.2. This characteristic of groupable offenses tracks subsection (a)(2)'s definition of relevant conduct as all acts and omissions that "were part of the same course of conduct or common scheme or plan as the offense of conviction." U.S.S.G. § 1B1.3(a)(2). For these reasons, "a disjunctive interpretation of the Relevant Conduct Guideline 'ensure[s] that the statutory scheme is coherent and consistent.'" *United States v. Ashford*, 718 F.3d 377, 383 (4th Cir. 2013) (internal citation omitted) (quoting *Healthkeepers, Inc. v. Richmond Ambulance Auth.*, 642 F.3d 466, 472 (4th Cir. 2011)).

Not surprisingly, then, this court recently adopted this reading of section 1B1.3 in *Ainabe*. We explained how, in a prior unpublished opinion, we had previously rejected the defendant's argument that subsection (a)(2) incorporates (a)(1)'s trailing clause:

> We rejected this argument in an unpublished opinion. In *United States v. Valenzuela–Contreras*, we noted that "[t]he plain language of § 1B1.3(a)(2) only refers to [(a)](1)(A) and [(a)](1)(B), not the 'occurred during the commission' language

which belongs more generally to § 1B1.3(a)(1). Otherwise, (a)(2) would have referred broadly to section (a)(1)." . . . The reasoning in *Valenzuela–Contreras* is cogent and persuasive because it is supported by the text of the Guidelines, and we apply that reasoning here.

938 F.3d at 691 (alteration in original) (quoting *Valenzuela–Contreras*, 340 F. App'x at 235 n.5).[1]

And notably, every other circuit to address this issue has reached the same conclusion. *See*, *e.g.*, *United States v. Schock*, 862 F.3d 563, 569 n.6 (6th Cir. 2017) ("The Guidelines draw a distinction between (a)(1) and (a)(2) relevant conduct. It is one we must respect."); *Ashford*, 718 F.3d at 383; *United States v. McCants*, 434 F.3d 557, 563 (D.C. Cir. 2006) (describing (a)(1) and (a)(2) as "distinct criteria"); *Jansen v. United States*, 369 F.3d 237, 248 (3rd Cir. 2004) ("Section (a)(2) stands on its own and is not expanded or superseded by the provisions of Section (a)(1)"); *Johnson*, 347 F.3d at 639 (holding that "the reference to subsections [(a)](1)(A) and [(a)](1)(B) in U.S.S.G. § 1B1.3(a)(2) refers only to the subsections themselves and not the trailing clause."); *United States v. Cuthbertson*, 138 F.3d 1325, 1327 (10th Cir. 1998) (recognizing that "[s]ubsections (a)(1) and (a)(2) adopt different rules") (quoting U.S.S.G. § 1B1.3, cmt. background).

Deckert's offense of conviction, possession of a controlled substance, is a groupable offense under § 3D1.2(d). *See* U.S.S.G. § 1B1.3(a)(2) (covering offenses "of a character for which § 3D1.2(d) would require grouping of

---

[1] *Valenzuela-Contreras* also noted that "the commentary accompanying § 1B1.3 contemplates scenarios in which acts and omissions that are part of the 'same course of conduct or common scheme or plan' may be included under § 1B1.3(a)(2) but do not occur during, in preparation for, or in the course of attempting to avoid detection or responsibility for the offense of conviction." 340 F. App'x at 235 n.5 (citing U.S.S.G. § 1B1.3 cmt. n.3). *See also Ainabe*, 938 F.3d at 691 n.18 (collecting examples).

multiple counts"); U.S.S.G. § 3D1.2(d) (requiring grouping "[w]hen the offense level is determined largely on the basis of . . . the quantity of a substance involved"). This means that Deckert's relevant conduct is defined by § 1B1.3(a)(2), and thus includes all acts and omissions that were part of the same common scheme or plan as his offense of conviction.

"Conduct is part of a common scheme or plan if it is 'substantially connected to [the offense of conviction] by at least one common factor, such as common victims, common accomplices, common purpose, or similar modus operandi.'" *United States v. Heard*, 891 F.3d 574, 575–76 (5th Cir. 2018) (quoting *United States v. Ortiz*, 613 F.3d 550, 557 (5th Cir. 2010)). *See also* U.S.S.G. § 1B1.3 cmt. n.5(B). In a drug-trafficking case, relevant conduct includes acts that were part of the common drug-trafficking scheme. *Barfield*, 941 F.3d at 762. Here, Deckert was caught with large, similar amounts of methamphetamine twice in four days in close geographic proximity. Because his flight from the police was part of that drug-trafficking scheme, the district court properly considered that conduct and thus properly applied the reckless endangerment enhancement.

## III.

It is puzzling why the dissent disagrees with our analysis. After all, the dissent previously agreed with the same reading of subsection (a)(2) that we apply here, when it joined our court's unanimous opinion in *Ainabe*.

For its part, the dissent defends its refusal to apply subsection (a)(2) here by invoking *United States v. Southerland*, 405 F.3d 263 (5th Cir. 2005). That is curious, considering that *Southerland* concerns the nexus requirement of subsection (a)(1), not the nexus requirement of subsection (a)(2).

As *Southerland* explains, under subsection (a)(1), the reckless endangerment enhancement applies only to those "acts or omissions

No. 19-40292

occurring during the offense of conviction, the preparation for the offense of conviction, or the course of attempting to avoid detection or responsibility for the offense of conviction." *Id.* at 268 (quoting U.S.S.G. § 1B1.3(a)(1)). By contrast, *Southerland* makes no pronouncement about the proper use of the reckless endangerment enhancement as applied to offenses covered by subsection (a)(2). Indeed, nowhere in *Southerland* does the court even mention, let alone construe, subsection (a)(2).

If there is a valid basis for ignoring *Ainabe* and invoking *Southerland* in this case—even though the sentencing enhancement here arises under subsection (a)(2) rather than subsection (a)(1)—the dissent does not offer one. The dissent offers no theory to explain why it is wrong to apply subsection (a)(2) to this case. Nor does the dissent explain why we should not apply the very same nexus requirement under subsection (a)(2) that it embraced in *Ainabe*.

\* \* \*

Section 1B1.3(a)(1) and (a)(2) contain different definitions of the relevant conduct. This case involves the definition in (a)(2). The district court here correctly applied that definition, and thus properly applied the reckless endangerment enhancement. Accordingly, we affirm.[2]

---

[2] Deckert also appeals the denial of his motions to suppress. But he waived the right to raise that challenge on appeal in his unconditional guilty plea. *See*, *e.g.*, *United States v. Stevens*, 487 F.3d 232, 238 (5th Cir. 2007).

No. 19-40292

James L. Dennis, *Circuit Judge*, dissenting in part and concurring in part in the judgment:

I respectfully dissent from affirming the 2-level enhancement of Deckert's sentence for reckless endangerment during flight because it is inconsistent with our circuit precedent, *United States v. Southerland*, 405 F.3d 263 (5th Cir. 2005) and the sentencing guidelines. The flight adjustment was based on an incident that occurred when a Lumberton, Texas city police officer sought to arrest Deckert for a traffic violation on February 10, 2018. Because the flight did not have a nexus to Deckert's "offense of conviction" of possessing methamphetamines and firearms on a separate date, February 6, 2018, near Silsbee, Texas the adjustment was not permissible under the United States Sentencing Guidelines. On a different issue, however, I agree with the majority that Deckert waived his right to re-urge his motions to suppress by entering an unconditional guilty plea.

Deckert pleaded guilty, without a plea agreement, to a drug offense and related firearm offense committed on February 6, 2018 near Silsbee, Texas. He did not plead guilty to any other offense. Deckert was also charged with a different drug offense committed in Lumberton, Texas on February 10, 2018. But Deckert did not plead guilty to that charge and it was dismissed. Therefore, the offense committed on February 6, 2018 near Silsbee, Texas is Deckert's only "offense of conviction" in the present case.

The "Application Instructions" to the United States Sentencing Guidelines, § 1B1.1, provide that the sentencing court shall determine the guideline range by applying the provisions of the guidelines manual in the following order, starting with these three steps:

> (1) Determine, pursuant to § 1B1.2 (Applicable Guidelines), the offense guideline section from Chapter Two (Offense Conduct) *applicable to the offense of conviction. See* § 1B1.2.

11

> (2) Determine the base offense level and apply any appropriate specific offense characteristics, cross references, and special instructions contained in the particular guideline in Chapter Two in the order listed.
>
> (3) *Apply the adjustments as appropriate* related to victim, role, and obstruction of justice from Parts A, B, and C of Chapter Three.

U.S.S.G. § 1B1.1 (emphasis added).

The district court's first step in calculating a defendant's sentence is to determine the offense guideline "applicable to the offense of conviction." *See* U.S.S.G. § 1B1.1(a)(1).  Thus, the Guidelines are clear that the "offense of conviction" is the key element in the sentencing process; the "offense of conviction" is the anchoring standard around which all other specific offense characteristics, adjustments, and instructions are gathered in order to determine a particular guideline range for a given defendant.

Necessarily, these principles govern the application of a § 3C1.2 adjustment for "reckless endangerment during flight."  The adjustment provides that "[i]f the defendant recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer, increase by 2 levels."  *Id.* § 3C1.2.  In *United States v. Southerland*, this court "read § 3C1.2 in the larger context of the guidelines," 405 F.3d at 266, and held that, "in light of § 1B1.3's express requirement that Chapter Three adjustments be based upon acts or omissions occurring during the offense of conviction, the preparation for the offense of conviction, or the course of attempting to avoid detection or responsibility for the offense of conviction," a § 3C1.2 enhancement can apply only when there is a "nexus" between the defendant's flight and the "offense of conviction.*"  *Id.* at 268.

Section 1B1.3, "Relevant Conduct (Factors that Determine the Guideline Range)," in relevant part, reads:

> (a)  Chapters  Two  (Offense  Conduct)  and  Three (Adjustments).    Unless  otherwise  specified,  . . .  (iv) *adjustments in Chapter Three, shall be determined on the basis of the following:*
>
> (1)(A)  *all  acts  and  omissions  committed*,  aided,  abetted, counseled, commanded, induced, procured, or willfully caused *by the defendant*; . . .
>
> that occurred during *the commission of the offense of conviction*, in preparation for *that offense*, or in the course of attempting to avoid detection or responsibility for *that offense* . . . .

§ 1B1.3(a) (emphasis added); *see Southerland*, 405 F.3d at 267.

*Southerland* therefore recognized that Guidelines themselves are the source of the nexus requirement.  In light of this requirement, the *Southerland* court rejected the government's argument that no connection or nexus between the flight and the offense of conviction was needed because the § 3C1.2 adjustment itself did not mention a nexus, *see Southerland*, 405 F.3d at 268, and also rejected the government's argument that a defendant who flees from law enforcement is necessarily attempting to evade responsibility for other potential charges because such reasoning was inconsistent with the need for a finding of a nexus as required by § 1B1.3(a).  *Id.* at 269.

Against  this  precedent,  the  majority  erroneously  reasons  that *Southerland* is inapplicable because it involved a defendant who pleaded guilty to bank robbery and credit card fraud, *see id.* at 263, and did not involve a "groupable offense" like the drug offense that Deckert pleaded guilty to violating.    From  this  unauthorized  distinction,  the  majority  erroneously

concludes that no nexus between the flight and the offense of conviction is required when a defendant is convicted of a groupable offense involving a "common scheme or plan" to possess drugs.

The majority's conclusion fails to recognize that *Southerland's* holding and its reasoning are faithful applications of U.S.S.G. § 1B1.3(a) that are not contingent on the type of offenses that a defendant is convicted of violating. Whether there is a nexus such that the § 3C1.2 adjustment can be applied resolves this case. If there is no nexus, the adjustment cannot be applied. There is no basis for a sentencing court, if it cannot find a nexus, to then continue into (a)(2) to apply an adjustment. In addition to *Southerland,* all of the circuit courts of appeals to consider this issue agree that the § 3C1.2 adjustment applies only if there is a nexus between the flight and the offense of conviction. *See e.g. United States v. Seals*, 813 F.3d 1038, 1045–46 (7th Cir. 2016) (collecting cases); *United States v. Porter*, 413 F. App'x 526, 531 (3rd Cir. 2011); *United States v. Dial*, 524 F.3d 783, 787 (6th Cir. 2008); *United States v. Gray*, 512 F. App'x 803, 809 (10th Cir. 2013); *see also* Thomas W. Hutchison, et al, Federal Sentencing Law and Practice, § 3C1.2, at 1072 (2021 ed.). None of the inapposite cases cited by the majority are to the contrary, as they do not sanction applying a § 3C1.2 adjustment absent a nexus.

Applying these foregoing principles to this case, it is clear that Deckert's flight from a police officer on February 10 lacks a nexus with his offenses of conviction of possessing drugs and firearms on February 6. Nothing in the record proves that Deckert's flight on February 10 was integral to, or part of, his February 6 offense of conviction or an attempt to evade responsibility for his February 6 offense of conviction. Indisputably, Deckert's February 6 offenses of conviction did not involve a flight or a motorcycle. The government has arguably proved, at most, that Deckert's flight from a Lumberton, Texas city police officer was related to his traffic

offense and the drugs in his backpack on February 10.  But Deckert did not plead guilty to possessing drugs on February 10 and that drug charge was dismissed.  Deckert only pleaded guilty to possessing drugs and firearms on February 6, near Silsbee, Texas, and the Guidelines nowhere permit a district court to substitute a different "offense" for the "offense of conviction" when calculating a sentence, including in the application of a flight adjustment.    Thus, the district court erred in applying the § 3C1.2 adjustment, and in my view we should therefore vacate and remand for resentencing.

Because the majority holds otherwise, I respectfully dissent.