**UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

No. 93-1125

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

EDWARD WILLIAMS, a/k/a E-MAC,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Texas

_____

May 27, 1994

Before POLITZ, Chief Judge, DAVIS and WIENER, Circuit Judges.

POLITZ, Chief Judge:

Convicted on a guilty plea of distribution of 10.19 grams of cocaine base in violation of 21 U.S.C. § 841(a)(1) and sentenced to 30 years imprisonment, Edward Williams appeals his sentence. Finding no reversible error, we affirm.

Background

Williams was indicted with a score of others in connection with a narcotics trafficking operation. Under a plea agreement he

pleaded guilty to one count of distribution of cocaine base; the government agreed to dismiss the remaining conspiracy count and to recommend that his sentence be made to run concurrently with a sentence he was then serving. The factual stipulation accompanying the guilty plea reflects that Edwards provided 10.19 grams of cocaine base to Thomas Edward Rackstraw, a codefendant, for sale to an undercover agent. In tentative findings the district judge informed Williams that he intended to hold him accountable for the total amount of drugs sold by the conspiracy -- some 20 kilograms of cocaine base. When Williams protested this quantity the district court gave him the opportunity to withdraw his guilty plea; Williams declined to do so. The court thereafter adopted its tentative findings and sentenced Williams to 30 years imprisonment. Williams timely appealed.

<u>Analysis</u>

Williams contests the trial court's decision to hold him accountable for the entire quantity of drugs marketed by the conspiracy. He contends that he should have been sentenced based solely on the quantity which he admitted trafficking. U.S.S.G. 1B1.3(a)(1)(B) provides that a defendant who participates in a joint criminal activity is accountable for the relevant conduct of the others which was reasonably foreseeable to him.[1] The district court found both requirements met. Reviewing that determination for clear error,[2] we conclude that the district court's finding

---

[1]**United States v. Puig-Infante**, 19 F.3d 929 (5th Cir. 1994).

[2]**United States v. Rogers**, 1 F.3d 341 (5th Cir. 1993).

2

reflects a plausible view of the record.

The base of operations for the criminal activity was F&F Car Company, a corporation established by Ronald Jerome Fisher, the leader, and Shelley Gene Franklin, a top echelon associate, for the purpose of laundering drug proceeds. According to the factual stipulation, Rackstraw contacted Williams, also known as "E-Mac," at the car company when an undercover agent inquired about the price of crack cocaine. After obtaining a quote, Rackstraw brought the agent to the premises. En route, Rackstraw assured the undercover agent that Williams or Fisher could obtain all the cocaine that the agent desired. Williams met them at a paint shop adjacent to the auto shop where he secured and provided the crack. The Presentence Investigation Report reflects that Williams' presence at the headquarters of the conspiracy was not happenstance. It cites an incident in which Fisher, Williams, and Rackstraw were stopped by the Arizona highway patrol and were found in possession of a 9 mm. handgun and $4000 in cash. It also describes an incident in which Rackstraw transported 17 ounces of cocaine base for Williams from Fort Worth to Denver.[3] Finally, in testimony given at codefendant Rackstraw's sentencing and noticed by the court without objection, Franklin described Williams as one who furnished drugs to distributors on behalf of the enterprise.

---

[3]The PSR also cites the opinion of law enforcement agents that Williams was "the muscle" behind the conspiracy but the report includes no factual support for that conclusion. As we stated in **United States v. Elwood**, 999 F.2d 814, 817-18 (5th Cir. 1993), "[b]ald, conclusionary statements do not acquire the patina of reliability by mere inclusion in the PSR." We do not consider that conclusion in our review.

This factual scenario reflects that Williams was more than a retail distributor accountable only for the drugs that he personally distributed.[4] He was, rather, part of the hub. He had an ongoing relationship with Fisher, operated out of the headquarters, and performed a variety of tasks for the enterprise. **United States v. Mitchell**,[5] on which Williams relies, is distinguishable; Mitchell was solely a distributor who had no other relationship to the top echelon of the conspiracy. The record amply supports the district court's finding that the full scope of the conspiracy was reasonably foreseeable to Williams.

The district court erred, however, in considering the indictment as evidence in the sentencing calculus. An indictment is merely a charge and does not constitute evidence of guilt.[6] That elementary rubric has long been a bedrock of instructions provided to jurors on voir dire examination and again in the final charge.[7] It would be ill-advised to discard this principle in

_____

[4]See U.S.S.G. 1B1.3, Commentary, Application Note 2.

[5]964 F.2d 454 (5th Cir. 1992).

[6]**Taylor v. Kentucky**, 436 U.S. 478 (1978); **Poretto v. United States**, 196 F.2d 392 (5th Cir. 1952); **United States v. Ciambrone**, 601 F.2d 616 (2d Cir. 1979); see also **United States v. Calandra**, 414 U.S. 338 (1974) (the grand jury's responsibilities are to determine whether there is probable cause to believe a crime has been committed and to protect citizens against unfounded criminal prosecutions); 1 Wright, Federal Practice and Procedure: Criminal 2d, § 121 at 338 (1982 and 1994 Supp.) ("An indictment . . . is the pleading by which the United States puts forward a criminal charge.").

[7]See, e.g., **United States v. O'Keefe**, 722 F.2d 1175 (5th Cir. 1983); **United States v. Nelson**, 498 F.2d 1247, 1248 n.1 (5th Cir. 1974).

sentencing procedures. Grand juries enjoy broad latitude in the conduct of their proceedings, free from restrictive evidentiary rules and other protective incidents of our treasured adversary proceedings. Such latitude to grand juries is acceptable because the consequences of an erroneous indictment are tempered before or at trial.[8] No such safeguard inures to a count which has been dismissed, as in the instant case. While evidence of illegal activities charged in counts other than the count(s) of conviction may be considered at sentencing, we hold that the indictment standing alone may not be considered in the sentencing analysis.[9]

Although the district court erred in its reliance on the indictment, the error was harmless. The court considered the indictment solely as reflecting that the sale for which Williams was convicted was part of the Fisher conspiracy. The record contains other reliable data upon which to establish that link, including the fact that Williams sold the 10.19 grams of crack from Fisher's base of operations. We entertain no doubt that the district court would have imposed the same sentence if it had given

---

[8]See **United States v. Mechanik**, 475 U.S. 66 (1986); **Costello v. United States**, 350 U.S. 359 (1956).

[9]We are cognizant that in **United States v. Ponce**, 917 F.2d 841 (5th Cir. 1990), cert. denied, 499 U.S. 940 (1991), we listed the indictment as support for the sentencing findings. We did so without discussion but in reliance on **United States v. Byrd**, 898 F.2d 450 (5th Cir. 1990), where an indictment was used to bolster hearsay evidence considered in sentencing. To the extent these cases may be taken to accord evidentiary value to an indictment for any purpose other than as a charging vehicle or for a pretrial detention decision, they would be inconsistent with the precedents cited in footnote 6 hereof.

5

no consideration to the indictment.[10]

Williams also complains that the quantity of drugs used in his sentencing carried a higher statutory penalty range than the lesser quantity to which he pled guilty. This objection lacks merit. Williams was informed at the time of his plea that he faced a sentence of imprisonment between 5 and 40 years. He received a sentence within that range. The 30-year sentence that was imposed resulted from the application of the Sentencing Guidelines; the statutory range for the 20 kilograms of cocaine base attributed to him was irrelevant. Williams was not entitled to a pre-plea fixing of exactly where within the 5-to-40-year range his sentence would fall. His expectations may not have been realized, but his constitutional rights were not infringed.[11]

AFFIRMED.

---

[10]See **Williams v. United States**, 112 S.Ct. 1112 (1992).

[11]See **United States v. Pearson**, 910 F.2d 221 (5th Cir. 1990), cert. denied, 498 U.S. 1093 (1991).