United States Court of Appeals
Fifth Circuit

**F I L E D**

**March 1, 2004**

Charles R. Fulbruge III
Clerk

UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

———————————————

No. 03-41038
SUMMARY CALENDAR

———————————————

UNITED STATES OF AMERICA

Plaintiff - Appellee

v.

CHADRIC DEWAYNE LUPER, also known as "Lil-G"

Defendant - Appellant

———————————————————————————————————————————

On Appeal from the United States District Court for the
Eastern District of Texas
(4:02-CR-88-2)

———————————————————————————————————————————

Before REYNALDO G. GARZA, DAVIS, and BARKSDALE, Circuit Judges.

REYNALDO G. GARZA, Circuit Judge:[1]

In this appeal, we review Chadric Luper's (hereinafter, "Luper") conviction and sentence

pursuant to 21 U.S.C. §§ 841(a)(1) and 846 for conspiracy to possess with the intent to distribute

50 grams or more of cocaine base and 1,000 kilograms or more of marijuana. For the following

reasons, we uphold the conviction and sentence.

---

[1]Pursuant to 5th Cir. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

-1-

I.

FACTUAL AND PROCEDURAL BACKGROUND

Luper pleaded guilty to conspiracy to possess with the intent to distribute 50 grams or more of cocaine base and 1,000 kilograms or more of marijuana. He admitted that on various dates between August 2000 and April 2002, he possessed approximately 203 grams of crack cocaine. Luper also admitted that he possessed a handgun and three marked $100 bills that were used in an undercover purchase of cocaine.

The Presentence Report, (hereinafter, "PSR") determined Luper's base offense level as 34. The PSR's drug-quantity calculation included (1) the quantity of crack cocaine purchased by undercover agents with the three marked $100 bills; (2) 6.97 grams of cocaine found in a coconspirator's car, which the coconspirator claimed he purchased from Luper; and (3) 5.38 ounces of marijuana and 3.41 grams of cocaine found in Luper's home.

Luper's offense score was increased two levels for possession of a dangerous weapon in the course of the conspiracy, but the score was reduced three levels for acceptance of responsibility, leaving him with a total offense level of 33. Luper's total offense level combined with his criminal history category of III, left the court with a sentencing guideline range of 168 to 210 months' imprisonment.

At sentencing, Luper objected to the PSR's drug-quantity calculation, arguing that the inclusion of the drugs purchased with marked bills and the drugs found in the coconspirator's car violated his rights to due process because the evidence supporting the inclusion of these amounts was not timely disclosed by the prosecution. Luper admits, however, that his base offense level

would remain the same even if these amounts were excluded. Luper also objected to the dangerous weapon enhancement, denying that he possessed the firearm, and arguing that there was an insufficient nexus between the firearm and the drug conspiracy.

The sentencing court overruled Luper's objections and sentenced him to 180 months' imprisonment and five years' supervised release. This appeal timely followed.

II.

DRUG-QUANTITY CALCULATION

Luper argues that the district court clearly erred in holding him accountable for the 2.42 grams of crack cocaine purchased by undercover agents with the three marked $100 bills found on Luper. According to Luper, he could have obtained the money "in any number of legitimate transactions... without any act in furtherance of the criminal conspiracy." Luper also argues that his coconspirator's statement linking Luper to the drugs found in the coconspirator's car was unreliable, and thus, the 6.97 grams of crack recovered in the car should not be included in his drug-quantity calculation.

We review the district court's determination of the quantity of drugs used in calculating Luper's offense level for clear error. *United States v. Ponce*, 917 F.2d 841, 842 (5th Cir. 1990). The determination is a factual finding that is not clearly erroneous so long as it is plausible in light of the record as a whole. *United States v. Shipley*, 963 F.2d 56, 58 (5th Cir. 1992). Luper bears the burden of showing that the disputed facts are materially untrue, inaccurate, or unreliable. *United States v. Angulo*, 927 F.2d 202, 205 (5th Cir. 1991).

A drug quantity may be attributed to a defendant involved in a criminal conspiracy if the defendant knew or should have known that such quantity was involved in the conspiracy. *United*

*States v. Puig-Infante*, 19 F.3d 929, 942 (5th Cir. 1994). When Luper pleaded guilty, he admitted that the marked $100 bills had been used to purchase cocaine. Thus, the 2.42 grams were properly attributed to Luper because he knew that the drugs were involved in the conspiracy. *Id.* As to the 6.97 grams of cocaine found in Luper's coconspirator's car, Luper offers no evidence to rebut the coconspirator's claim that he purchased the drugs from Luper. If no relevant evidence is submitted to rebut the information in the PSR, the district court is free to adopt its findings without further inquiry or explanation. *United States v. Mir*, 919 F.2d 940, 943 (5th Cir. 1990). Based upon the information in the PSR, the district court's determination was plausible and did not constitute clear error. *See Shipley*, 963 F.2d at 58.

## III.

## ADEQUATE NOTICE OF CONDUCT

Luper next argues that his right to due process was violated by the inclusion in the drug-quantity determination of the 5.38 ounces of marijuana and 3.41 grams of cocaine seized from his apartment. Luper contends that the evidence supporting this conduct was not timely disclosed by the prosecution.

Luper waived any argument that the prosecution failed to comply with the court's pretrial discovery order when he pleaded guilty. *See United States v. Owens*, 996 F.2d 59, 60 (5th Cir. 1993). Furthermore, the PSR served as adequate notice to Luper of the drugs seized from his home. *See United States v. Gaudet*, 966 F.2d 959, 963 (5th Cir. 1992). Thus, we reject Luper's due process argument.

## IV.

## POSSESSION OF A FIREARM

Finally, Luper contends that the district court erred in increasing his offense level for possession of a firearm. Luper asserts that the prosecution failed to prove that he possessed a firearm, and that they also failed to prove the firearm seized from his home was connected to illegal drug-trafficking.

The sentencing guidelines allow for a defendant's sentence to be increased by two levels when the defendant possessed a dangerous weapon in the course of a conspiracy involving the manufacture, import, export, trafficking, or possession of drugs. U.S.S.G. § 2D1.1(b)(1); *United States v. Gaytan*, 74 F.3d 545, 559 (5th Cir. 1996). We review the district court's decision to enhance Luper's offense level for possession of a firearm for clear error. *See United States v. Broussard*, 80 F.3d 1025, 1041 (5th Cir. 1996).

The district court may apply the enhancement if a firearm was found in the defendant's possession, unless it is clearly improbable that the firearm was connected to the offense. *See United States v. Vasquez*, 161 F.3d 909, 912 (5th Cir. 1998). The prosecution must show that a temporal and spatial relation existed between the weapon, the drug trafficking, and the defendant. *Id.* The firearm must have been found in the same location where drugs or drug paraphernalia were stored, or where drug transactions occurred. *United States v. Eastland*, 989 F.2d 760, 770 (5th Cir. 1993).

Luper admitted that on at least one occasion he possessed crack cocaine, marijuana, and a handgun. A handgun, cocaine, and marijuana were all found at the apartment at which Luper lived and was the leaseholder. There is adequate proof in the record linking the firearm and Luper's drug trafficking. Thus, the district court did not err in assessing an increase pursuant to § 2D1.1(b)(1).

V.

CONCLUSION

For the foregoing reasons, we uphold the conviction and sentence.