# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 17-10376

United States Court of Appeals
Fifth Circuit

**FILED**
July 1, 2019

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff–Appellee,

versus

GLORIA ANN PALACIOS,

Defendant–Appellant.

Appeal from the United States District Court
for the Northern District of Texas

Before SMITH, WIENER, and ELROD, Circuit Judges.
JERRY E. SMITH, Circuit Judge:

Gloria Palacios pleaded guilty of conspiracy to possess with intent to distribute a controlled substance. After the district court dismissed her untimely direct appeal, Palacios moved for relief per 28 U.S.C. § 2255 (2012), contending, *inter alia*, that trial counsel had rendered ineffective assistance because of a conflict of interest. The court denied that motion, declining to hold a hearing on the conflict-of-interest claim. Finding no error, we affirm.

No. 17-10376

## I.

In September 2015, Palacios was indicted in the Northern District of Texas for conspiracy to possess with intent to distribute fifty grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B) and 846. Palacios was represented by Mark Fernandez. According to Palacios, her cousin Francisco "Pancho" Gallegos—who was later indicted in the Northern District for his role in a related drug conspiracy—hired Fernandez to represent her. Palacios claims that she was "personally present" when Gallegos "delivered cash to her attorney for future representation." She also asserts that Gallegos transferred real property to Fernandez as further payment for his representation of Palacios.

On October 16, 2015, the district court held a rearraignment hearing, at which Palacios acknowledged, under oath, that, *inter alia*, (1) she was satisfied with Fernandez's legal representation, (2) she had no complaints whatsoever with any actions Fernandez had taken or failed to take, and (3) her decision to plead guilty was knowing and voluntary. The district court accepted her guilty plea, finding that Palacios was "fully competent and capable of entering an informed plea, and that her plea of guilty . . . [was] a knowing and voluntary plea supported by an independent basis in fact containing the essential elements of that offense, and that such plea did not result from force, threats, or promises."

In preparation for sentencing, Palacios and Fernandez met with the probation officer. During the meeting Palacios repeatedly implicated Gallegos as the organizer of the conspiracy. Fernandez did not object or otherwise attempt to interfere. Following the interview, the probation officer declined to apply the three-level reduction for acceptance of responsibility, finding that Palacios had minimized her role in the offense throughout the interview.

2

No. 17-10376

In February 2016, the district court sentenced Palacios to 480 months' imprisonment and four years' supervised release. At the sentencing hearing, the court informed Palacios that she had "the right to make any statement or presentation . . . on the subject of mitigation"—*i.e.*, to speak on any subject that she felt the court should be aware of when determining what sentence to impose. Palacios stated,

> Your Honor, my name is Gloria Palacios. I'm from Dallas, Texas, and I just want to say that I'm sorry for any inconvenience I've caused. I wasn't emotionally and financially stable at the time the situation happened, and I just ask that you give me another opportunity to be with my kids and my family, and I'm sorry for everything. Thank you.

Palacios made no mention of her counsel's alleged conflict.

After sentencing, Palacios sent Fernandez a letter expressing a desire to terminate him as counsel. The letter made no mention of any conflict of interest. Palacios then filed an untimely direct appeal with this court. We issued two orders. First, "we remand[ed] . . . for a determination whether the untimely filing of the notice of appeal was due to excusable neglect or good cause." Second, we granted Fernandez's motion to withdraw as Palacios's counsel. The district court determined that Palacios had failed to show excusable neglect or good cause.

Palacios then filed a § 2255 motion asserting four grounds. First, that trial counsel provided ineffective assistance of counsel ("IAC") by failing adequately to explain relevant conduct and the use of that conduct at sentencing. Second, that Fernandez provided IAC at sentencing by failing to challenge various enhancements recommended in the presentence report ("PSR"). Third, that counsel provided IAC because he labored under a conflict of interest. And fourth, that Fernandez provided IAC by failing to file a direct appeal, despite being instructed to do so. The district court denied Palacios's first three claims

3

without a hearing, finding that they were meritless, but held a hearing on the fourth.[1]

At the evidentiary hearing, Palacios's court-appointed attorney, Danny Burns, called her to testify.  The court permitted Burns to ask Palacios several questions regarding the circumstances of Fernandez's hiring as well as his alleged conflict of interest, even though the topic was arguably outside the scope of the hearing.  Palacios was also permitted to testify concerning her supposed desire to cooperate further with the government and Fernandez's alleged refusal to let her do so.

The government called Fernandez, who stated, unequivocally, that Palacios never asked him to file an appeal.  Although permitted to cross-examine Fernandez, Burns declined to ask him any questions concerning the circumstances of his hiring or his alleged conflict of interest, despite the court's earlier willingness to allow Burns to proceed on a similar line of questioning.

The district court affirmed its denial of the first three claims and denied the fourth as well, determining that it, too, was without merit.  The court declined to grant a certificate of appealability ("COA").

Palacios sought from this court a COA on her conflict-of-interest and failure-to-appeal claims.  We granted a COA on the conflict-of-interest claim only, concluding that Palacios had failed to make "a showing of debatable

---

[1] As part of its response to Palacios's § 2255 motion, the government included a sworn affidavit from Fernandez, disputing her claims.  Concerning his initial retainer by Palacios, Fernandez stated, in relevant part,

> I was retained by Ms. Palacio's [*sic*] state attorney who had received a retainer to cover legal services for Ms. Palacios.  Since the state attorney does not take federal cases she retained me to represent Ms. Palacios.  After visiting Ms. Palacios and her being aware of who hired me, she agreed to my representation. The state attorney has only represented Ms. Palacios and there's no indication that she ever represented any co-defendants associated with Ms. Palacios.

entitlement to relief" on her failure-to-appeal claim.  Palacios appeals *pro se.*

## II.

"Under the Sixth Amendment, if a defendant has a constitutional right to counsel, he also has a corresponding right to representation that is free from any conflict of interest." *United States v. Infante*, 404 F.3d 376, 389 (5th Cir. 2005) (citation omitted).  IAC claims are generally governed by the standard in *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  That standard "requires a showing that counsel's performance was deficient, in that it fell below an objective standard of reasonableness, as well as a showing of prejudice, which is defined as a reasonable probability that counsel's error changed the result of the proceeding." *Perillo v. Johnson*, 205 F.3d 775, 781 (5th Cir. 2000).  When a defendant alleges that counsel's "conflict of interest stem[s] from "multiple representation," rather than . . . "from a conflict between the attorney's personal interest and that of his client," *Infante*, 404 F.3d at 391 (citation omitted), our analysis is governed by *Cuyler v. Sullivan*, 446 U.S. 335, 348–50 (1980).

To succeed on an IAC claim under *Sullivan*, a defendant must demonstrate that his counsel labored under "an actual conflict of interest that adversely affected his performance at trial." *Infante*, 404 F.3d at 391.  This is a fact-intensive inquiry.  *Id.* at 392.  "An 'actual conflict' exists when defense counsel is compelled to compromise his or her duty of loyalty or zealous advocacy to the accused by choosing between or blending the divergent or competing interests of a former or current client." *Perillo*, 205 F.3d at 781.  An "[a]dverse effect may be established with evidence that some plausible alternative defense strategy or tactic could have been pursued, but was not because of the actual conflict impairing counsel's performance." *Id.* (internal quotation marks and citation omitted).

Nonetheless, "the *Sullivan* standard is not properly read as requiring

inquiry into actual conflict as something separate and apart from adverse effect. An 'actual conflict,' for Sixth Amendment purposes, is a conflict of interest that adversely affects counsel's performance." *Mickens v. Taylor*, 535 U.S. 162, 172 n.5 (2002). Ultimately, if a defendant successfully "establishes an actual conflict that adversely affected counsel's performance," then "prejudice is presumed without any further inquiry into the effect of the actual conflict on the outcome of the defendant's trial." *Perillo*, 205 F.3d at 781–82.

Palacios's conflict-of-interest claim is analyzed in light of her guilty plea. "A voluntary guilty plea waives all nonjurisdictional defects in the proceedings against the defendant." *United States v. Glinsey*, 209 F.3d 386, 392 (5th Cir. 2000); *see also Smith v. Estelle*, 711 F.2d 677, 682 (5th Cir. 1983). Moreover, "[s]olemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). Therefore, "[w]hen a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *United States v. Smallwood*, 920 F.2d 1231, 1240 (5th Cir. 1991) (citation omitted). This includes all IAC claims "except insofar as the ineffectiveness is alleged to have rendered the guilty plea involuntary." *Glinsey*, 209 F.3d at 392.

## III.

"We review the district court's denial of § 2255 relief *de novo*, and its denial of an evidentiary hearing for abuse of discretion." *United States v. Allen*, 918 F.3d 457, 460 (5th Cir. 2019). "A § 2255 motion requires an evidentiary hearing unless either (1) the movant's claims are clearly frivolous or based upon unsupported generalizations, or (2) the movant would not be entitled to relief as a matter of law, even if his factual assertions were true." *Id.* (citation

omitted).

## A.

Palacios asserts that Fernandez violated her Sixth Amendment right to conflict-free counsel because he was paid by her cousin Gallegos.[2]  Palacios states that she wished to cooperate with the government by providing information about her distributor (Gallegos) but that Fernandez refused to allow her to do so.  Consequently, Palacios avers, "Fernandez placed his own financial interest before his client's . . . liberty interest."

Palacios cites several Supreme Court and Fifth Circuit precedents.  She invokes *Infante* for the proposition that "[a] conflict [of interest] exists when defense counsel places himself in a position conducive to divided loyalties." 404 F.3d at 392 (second alteration in original) (citations omitted).  Palacios also cites *Beets v. Scott*, 65 F.3d 1258 (5th Cir. 1995) (en banc), in which we stated that "prejudice is presumed if the defendant shows that an actual conflict of interest adversely affected his lawyer's performance."  *Id.* at 1265.  Finally, Palacios highlights *Wood v. Georgia*, 450 U.S. 261 (1981), which held that a conflict of interest may arise when an employee is represented by his employer's lawyer, *id.* at 271–72, particularly if "counsel was influenced in his basic strategic decisions by the interests of the employer who hired him," *id.* at 272.  In light of this precedent, Palacios asks us to vacate and remand for an evidentiary hearing.

The government makes two responses.  First, it contends that "Palacios waived the conflict-of-interest claim because she pled guilty despite purport-

---

[2] Confusingly, Palacios claims that Gallegos paid Fernandez by transferring real property to him, while also contending that Gallegos "went through Angel Mata to pay Mark Fernandez."  Mata was initially retained to represent Palacios on unrelated charges in state court.

edly knowing of the alleged conflict." Second, the government maintains that, even assuming *arguendo* that her claim is not waived, Palacios fails to support it with anything other than conclusional and unsubstantiated allegations.

## B.

The government has the better argument. With respect to waiver, Palacios contends that "[b]ut for counsels [*sic*] unprofessional behavior the result of the proceedings would have been different [and] she would have pled not guilty." Her testimony at sentencing and at the § 2255 evidentiary hearing, however, belies such a notion. Although given ample opportunity at both hearings, Palacios never asserted that the alleged conflict somehow rendered her guilty plea involuntary.

In fact, the record plainly demonstrates that the plea was both knowing and voluntary. As the district court noted in denying Palacios's § 2255 motion,

> Movant was placed under oath and, among other things, stated that she understood that she was waiving her right to trial; she was satisfied with her attorney and did not have any complaint whatsoever; her plea was based on actual guilt and was made knowingly, voluntarily, and without pressure or coercion; she did not have any deal, understanding, or agreement and that no one had made any promise to her to induce her to enter a guilty plea; . . . she would not be permitted to withdraw her plea if her sentence was higher than she expected; [and] she committed each element of the offense charged . . . .

"[A] defendant ordinarily will not be heard to refute her testimony given at a plea hearing while under oath." *United States v. Cervantes*, 132 F.3d 1106, 1110 (5th Cir. 1998).

A defendant waives a conflict-of-interest claim when he voluntarily pleads guilty. *United States v. Tijerina*, No. 00-41365, 2002 WL 760264, at *1 (5th Cir. Apr. 15, 2002) (per curiam) (unpublished). Consequently, the district court did not abuse its discretion in denying Palacios a second evidentiary

hearing and did not err in denying her § 2255 motion.[3]   The judgment is
AFFIRMED.

---

[3] Moreover, we "may affirm . . . on any grounds supported by the record." *Palmer v. Waxahachie Indep. Sch. Dist.*, 579 F.3d 502, 506 (5th Cir. 2009) (citation omitted). Accordingly, even if Palacios had not waived this issue, our conclusion would be unchanged. When "the movant's claims are clearly frivolous or based upon unsupported generalizations," an evidentiary hearing is not required. *Allen*, 918 F.3d at 460 (citation omitted). Palacios's allegation that Fernandez labored under a conflict of interest is wholly unsubstantiated.

For example, in her § 2255 motion, Palacios claimed that she personally witnessed Gallegos deliver cash to Fernandez and transfer title to his house as payment for Fernandez's representation of Palacios. On appeal, however, Palacios contends that the transaction was actually funneled through her state attorney, Angel Mata. It is therefore unsurprising that the district court chose to credit the sworn affidavit of Fernandez, who stated that he was retained by Mata because she did not represent federal defendants. Fernandez also stated that "[Mata] has only represented Ms. Palacios and there's no indication that she ever represented any co-defendants associated with Ms. Palacios."

Additionally, when Palacios met with the probation office in preparation for sentencing, Fernandez was present. Although Palacios repeatedly implicated Gallegos as an organizer of the conspiracy, there is no evidence suggesting that Fernandez prevented Palacios from sharing any information with probation or that he attempted to interfere in any way.

Lastly, "[s]olemn declarations in open court carry a strong presumption of verity, forming a formidable barrier in any subsequent collateral proceedings." *Cervantes*, 132 F.3d at 1110 (internal quotation marks and citation omitted). During her plea colloquy, the district court asked Palacios whether she was satisfied with the legal representation she received from Fernandez. She answered, "Yes, sir." The court also asked whether she had "any complaint whatsoever with anything [Fernandez did] or failed to do" while serving as her attorney. Palacios answered, "No, sir."

Considering this evidence, Palacios fails to provide support for her allegation that Fernandez labored under "an actual conflict of interest that adversely affected his performance at trial." *Infante*, 404 F.3d at 391. Therefore, this alternative basis also supports a finding that the district court did not abuse its discretion in denying a second evidentiary hearing and did not err in denying Palacios's § 2255 motion.