# United States Court of Appeals for the Fifth Circuit

———————

No. 24-50072

———————

United States Court of Appeals
Fifth Circuit

**FILED**

December 4, 2024

Lyle W. Cayce
Clerk

United States of America,

*Plaintiff—Appellee*,

*versus*

Gilberto Hernandez,

*Defendant—Appellant*.

———————————————————————

Appeal from the United States District Court
for the Western District of Texas
USDC No. 4:22-CR-734-1

———————————————————————

Before Clement, Graves, and Willett, *Circuit Judges*.

Per Curiam:[*]

A federal grand jury indicted Defendant-Appellant Gilberto Hernandez, along with seven co-defendants, for one count of conspiracy to possess cocaine with intent to distribute and eight counts of possession of cocaine with intent to distribute (five of which were for amounts under 500 grams and three of which were for amounts greater than or equal to 500 grams). In exchange for a dismissal of the conspiracy count, Hernandez

———————————————

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

pleaded guilty to the eight possession counts. At sentencing, the district court accepted the recommendation of the Presentence Investigation Report (PSR) to hold Hernandez responsible for distributing 58.69 kilograms of cocaine, even though that number included amounts distributed by his co-conspirators and non-parties. The district court also applied a sentencing enhancement based on Hernandez's leadership role in the drug trafficking operation. On appeal, Hernandez raises a number of issues with his sentence, chief of which are challenges to the quantity of drugs that determined his base offense level and the leadership-role enhancement. We find no error in the base offense level or sentencing enhancement but recognize that Hernandez received a sentence above the statutory maximum on the five possession counts for amounts under 500 grams. Accordingly, we AFFIRM IN PART, VACATE IN PART, and REMAND for resentencing consistent with this opinion.

## I.

## A.

In February 2021, officers with U.S. Customs and Border Protection in El Paso, Texas found nearly ten kilograms of cocaine in a hidden compartment of a truck entering the country from Mexico. Agents discovered fingerprints on the hidden compartment that were a positive match with Hernandez's prints. A few months later, agents with the Drug Enforcement Administration (DEA) began investigating Hernandez after receiving a tip that he would be selling cocaine in Fort Stockton, Texas. Over the course of the investigation, between August 2021 and July 2022, Hernandez sold cocaine to an undercover officer on eight different occasions.

The first sale occurred on August 20, 2021, when agents watched Hernandez deliver four ounces of cocaine to the undercover source at a truck stop in Fort Stockton. In September 2021, DEA agents witnessed

No. 24-50072

Hernandez sell the source nine ounces of cocaine for $5,000 in Monahans, Texas. A month later, the source bought a half kilogram of cocaine from Hernandez for $9,200. After this sale, DEA agents surveilled Hernandez stopping at the home of his co-conspirator Anthony Bustos, Sr., who quickly entered and exited Hernandez's vehicle before returning to the residence.

In January 2022, Hernandez contacted the undercover source to arrange for another sale, either of pure cocaine or an amount of the drug that had been cut with unknown agents. Hernandez told the source that the cocaine he gets from his supplier is 96% pure, and he offered to show the source how to cut pure cocaine so as to sell more. The source nevertheless arranged to buy eighteen ounces of cut cocaine for $9,200. At the designated time, Hernandez arrived at the delivery spot with a co-conspirator, Juan Mora, in the passenger seat of his truck. According to the source, Hernandez and Mora moved around plastic bags and clear cellophane wrapping while waiting for the exchange. Shortly thereafter, DEA agents observed the transaction, which occurred as expected.

A few days later, DEA agents watched Hernandez meet with co-conspirator Armiro Cabello in a parking lot in Midland, Texas. Hernandez gave a plastic bag to the passenger in Cabello's truck, and later, when agents tried to stop the vehicle, the passenger threw the bag out of the truck's window. The bag contained two-and-a-half kilograms of cocaine. After being arrested, Cabello spoke to officers and estimated the value of the cocaine to be $60,000. Cabello also noted that cartel members avoid placing such large quantities of drugs in the hands of an untrusted individual.

The next month, February 2022, Hernandez offered to sell the source a kilogram of cut cocaine for $15,000 or pure cocaine for $28,000. At the agreed-upon exchange site, DEA agents watched Hernandez's co-conspirator Mora arrive and give the source 154 grams of cocaine for $4,000.

3

Mora said that Hernandez had sent him to meet the source and that the source might occasionally deal with Mora going forward, but the drugs would still come from Hernandez.

In March 2022, Hernandez and the source met again for a drug deal. They discussed various ratios of pure cocaine to cut cocaine and their profitability. Hernandez also told the source that he gives his men in Monahans sixteen ounces of cocaine, which they then cut and sell themselves. During this conversation, Hernandez mentioned that he has friends in Ciudad Juárez, Mexico, because he buys all his cocaine from them in cash.

Around this same time, DEA agents began intercepting text messages between Hernandez and Bustos, who was based in Monahans. Hernandez communicated that he was traveling to visit Bustos because some cocaine needed to be cut. Hernandez later asked Bustos to meet him at a rest area on Interstate 10, promising Bustos extra cocaine for the additional travel. Weeks later, Bustos texted that he had $10,000 for Hernandez to collect. Hernandez replied that with the money from Bustos and fellow co-conspirator Daniel Meza, Hernandez could "buy our next one." Following this text exchange, DEA agents observed Hernandez enter Bustos's home, and then the two men exited shortly thereafter, with Bustos carrying a small brick-shaped item in his hand. The next month, May 2022, Hernandez again collected cash from Bustos at his residence in Monahans.

Hernandez completed another sale of cocaine to the undercover source in July 2022. In November 2022, Hernandez reached out to the source to confirm that he wanted four ounces of pure, uncut cocaine. The two men then exchanged the drugs and cash at a truck stop in Pecos, Texas. During the exchange, Hernandez advised the source to look for people who had gone to jail and would not snitch and then hire them to sell drugs. Hernandez also

explained that he started out taking small amounts of cocaine to "his guys in Monahans," but now he brings up to thirty ounces at a time. Hernandez said that his men have since acquired their own people who would sell for them.

Later that month, agents arrested Hernandez at a gas station. Agents also arrested Hernandez's co-conspirators: Mora, Meza, Bustos, Cesar Rodarte, and George Mendoza.[1] During the co-conspirators' proffers, each offered additional information regarding Hernandez's drug trafficking operations. For example, Mora told DEA agents that he and Hernandez took a trip to Denver, Colorado, where Hernandez delivered approximately 4 kilograms of cocaine to someone.

**B.**

On November 10, 2022, a federal grand jury indicted Hernandez and his co-conspirators as co-defendants in a nine-count indictment. Count One of the indictment charged all defendants with conspiracy to possess cocaine with intent to distribute, in violation of 21 U.S.C. § 846. Counts Two, Three, Six, Seven, and Eight charged Hernandez and various co-defendants with possession with intent to distribute cocaine in an amount fewer than 500 grams, in violation of 21 U.S.C. § 841(a)(1) & (b)(1)(C). Counts Four, Five, and Nine charged Hernandez with possession with intent to distribute cocaine in an amount greater than or equal to 500 grams, in violation of 21 U.S.C. § 841(a)(1) & (b)(1)(B). Counts Six and Nine also included charges of aiding and abetting in violation of 18 U.S.C. § 2.

During discovery, counsel for Hernandez moved the district court to order a pre-plea PSR or to order the government to provide specific discovery. Hernandez's counsel advised the court that Count One of the

_____

[1] Another co-conspirator, Cabello, was arrested earlier, in January 2022, after his passenger threw drugs received from Hernandez out of the window of Cabello's truck.

indictment charged Hernandez with conspiring to distribute over five kilograms, but the discovery produced to date only corroborated a little over four kilograms. Further, Hernandez's counsel sought discovery supporting Hernandez's alleged role as leader of the drug trafficking operation.

In May 2023, the magistrate judge held a hearing on Hernandez's motion. The judge declined to order a pre-plea PSR, but he did order the government to "provide the defense all the drug quantities the government [knew] about in this case," as well as when those drugs were collected. Weeks later, in May 2023—and before the government turned over all the drug quantity information—Hernandez accepted a plea agreement whereby he pleaded guilty to the possession counts (Counts Two through Nine) in exchange for a dismissal of the conspiracy count (Count One).

A probation officer from U.S. Probation and Pretrial Services then began preparing Hernandez's PSR based on the investigative reports from the Department of Homeland Security Investigation Office and the DEA. The PSR determined that Hernandez should be held responsible for distributing 58.69 kilograms of cocaine. The probation officer arrived at this amount by adding up the following quantities: (1) 3.91 kilograms from the controlled buys with the undercover source; (2) 9.96 kilograms seized at the port of entry in February 2021; (3) 4 kilograms that Hernandez and Mora delivered to Denver; and (4) and 40.82 kilograms attributable to co-conspirators Rodarte, Meza, Bustos, and Mendoza. The total quantity of 58.69 kilograms yielded a base offense level of 34. U.S.S.G. § 2D1.1(a)(5) & (c)(3).

The probation officer also determined that Hernandez was "an organizer or leader of a criminal activity that involved five or more participants" and therefore added a four-level enhancement under U.S.S.G.

§ 3B1.1(a). Ultimately, the PSR recommended a Guidelines imprisonment range of 262 to 327 months.

Hernandez made several objections to the PSR that are relevant to this appeal. First, because the government dismissed the conspiracy count as part of the guilty plea, Hernandez objected to the attribution of his co-conspirators' actions to him as "relevant conduct" under U.S.S.G. § 1B1.3. For similar reasons, Hernandez took issue with the quantity of cocaine for which the PSR held him responsible. Third, Hernandez disputed the inclusion of Mora's statements regarding the trip to Denver, alleging that this information had not been disclosed to him, in violation of the court's discovery order. And lastly, Hernandez claimed that the four-level enhancement based on his leadership role was not supported by the record.

Hernandez renewed these objections at the sentencing hearing, but the district court overruled them. The court determined that Hernandez and his co-conspirators engaged in "jointly undertaken criminal activity" under U.S.S.G. § 1B1.3, which meant he could be held responsible for "all acts and omissions which were within the scope of the jointly undertaken criminal activity, in furtherance of that criminal activity and reasonably foreseeable in connection with that criminal activity that occurred during the commission of the offenses of conviction." In this same vein, the court found the estimate of 58.69 kilograms accurate. As to the leadership enhancement, the court concluded that Hernandez was the leader of the drug trafficking operation, citing his co-defendants' statements that he was the boss, that he instructed them on how to sell and cut, and that he provided them the drugs to distribute.

The district court judge sentenced Hernandez to 327 months on each of the eight possession counts, all to run concurrently. Hernandez timely appealed.

## II.

Hernandez raises a number of issues on appeal, each of which we will address in turn. First, we consider Hernandez's arguments as to the relevant conduct of his co-conspirators and the drug quantity of 58.69 kilograms.

## A.

A district court's conclusion as to what constitutes relevant conduct for sentencing purposes is a factual finding reviewed for clear error. *United States v. Buck*, 324 F.3d 786, 796 (5th Cir. 2003). Additionally, "[a] district court's factual determination regarding the quantity of drugs used to establish a base offense level for sentencing purposes is reviewed for clear error." *United States v. Piper*, 912 F.3d 847, 853 (5th Cir. 2019) (per curiam). Factual findings are not clearly erroneous if they are "plausible in light of the record as a whole." *United States v. Turner*, 319 F.3d 716, 724 (5th Cir. 2003) (quoting *United States v. Johnston*, 127 F.3d 380, 403 (5th Cir. 1997)).

## B.

Hernandez argues that the district court could not consider his co-conspirators' actions as relevant conduct under U.S.S.G. § 1B1.3 because he was not convicted of the conspiracy count (Count One). This is incorrect. *See United States v. Williams*, 22 F.3d 580, 581–82 (5th Cir. 1994) (affirming district court's decision to hold defendant accountable for selling some 20 kilograms of cocaine base despite only pleading guilty to distributing 10.19 grams of cocaine base). We have explained that "the base offense level can reflect quantities of drugs not specified in the count of conviction if they were part of the same course of conduct or part of a common scheme or plan as the count of conviction." *United States v. Moore*, 927 F.2d 825, 827 (5th Cir. 1991) (quoting *United States v. Mir*, 919 F.2d 940, 943 (5th Cir. 1990)). "The defendant need not have been convicted of, or even charged with, the other

offenses for them to be considered relevant conduct for sentencing purposes." *United States v. Rhine*, 583 F.3d 878, 885 (5th Cir. 2009).

In *United States v. Deckert*, 993 F.3d 399 (5th Cir. 2021), we further clarified that relevant conduct under subsection (a)(2) of U.S.S.G. § 1B1.3 "includes all acts and omissions that were part of the same common scheme or plan as his offense of conviction," even if the defendant was not convicted of those same acts and omissions, and even if those acts did not occur during the offense of conviction. *Id.* at 403–04; *cf.* U.S.S.G. § 1B1.3(a)(1) (requiring conduct to occur during commission of offense of conviction, in preparation for that offense, or in attempt to avoid responsibility for same). Subsection (a)(2) applies to "offenses of a character for which § 3D1.2(d) would require grouping of multiple counts," otherwise known as "groupable offenses." U.S.S.G. § 1B1.3(a)(2); *Deckert*, 993 F.3d at 400. Hernandez's offenses of possession with intent to distribute are subject to § 3D1.2(d) because "the offense level is determined largely on the basis of . . . the quantity of a substance involved." U.S.S.G. § 3D1.2(d). Therefore, the actions of Hernandez's co-conspirators could be considered relevant conduct under subsection (a)(2) if they were part of the same common scheme or plan as Hernandez's offenses of conviction.

"Conduct is part of a common scheme or plan if it is substantially connected to the offense of conviction by at least one common factor, such as common victims, common accomplices, common purpose, or similar modus operandi." *Deckert*, 993 F.3d at 404 (cleaned up). "In a drug-trafficking case, relevant conduct includes acts that were part of the common drug-trafficking scheme." *Id.* Although the district court referred to subsection (a)(1) of § 1B1.3 of the Guidelines, rather than subsection (a)(2), as part of its explanation for holding Hernandez responsible for his co-conspirators' actions, the record before the court showed that the conduct of Hernandez's co-conspirators was substantially connected to Hernandez's

offenses of conviction.[2] And we can affirm on any grounds supported by the record. *United States v. McSween*, 53 F.3d 684, 687 n.3 (5th Cir. 1995).

The co-conspirators' actions were substantially connected to Hernandez's drug trafficking because they took orders from him and received their supply of drugs from him. Rodarte, Meza, Bustos, Cabello, Mora, and Mendoza all pleaded guilty to the same conspiracy count with which Hernandez was charged. In Monahans, Bustos and Meza sold cocaine that Hernandez supplied to them. Hernandez traveled to Bustos's residence to help cut cocaine and on two occasions to collect cash earned from Bustos's and Meza's sales of Hernandez's drugs. Agents witnessed Hernandez give a plastic bag full of cocaine to a passenger in Cabello's truck. Agents also saw Hernandez and Mora exchange drug paraphernalia while waiting for the undercover source to arrive for a drug deal. Later, Mora made an exchange with the source and told him that although Mora might deliver the drugs in the future, they would still come from Hernandez. Rodarte admitted that DEA agents intercepted electronic communications between him and Hernandez showing that Rodarte "identified and introduced kilogram quantity sources of . . . cocaine." Finally, Mendoza purchased cocaine from Hernandez on multiple occasions.

Hernandez fails to show that any of the above information lacks "sufficient indicia of reliability to support its probable accuracy." *United States v. Huskey*, 137 F.3d 283, 291 (5th Cir. 1998) (internal quotations omitted). "Generally, a PSR bears sufficient indicia of reliability to permit

_____

[2] Subsection (a)(1) includes the requirement that the acts and omissions, or the jointly undertaken criminal activity, "occur[] during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense." U.S.S.G. § 1B1.3(a)(1). Subsection (a)(2) has no such requirement and is subject to the "substantially connected" test. *Deckert*, 993 F.3d at 404.

the sentencing court to rely on it at sentencing. The defendant bears the burden of demonstrating that the PSR is inaccurate; in the absence of rebuttal evidence, the sentencing court may properly rely on the PSR and adopt it." *United States v. Ayala*, 47 F.3d 688, 690 (5th Cir. 1995) (citations omitted). Hernandez identifies no rebuttal evidence, and the district court was entitled to rely on and adopt the contents of the PSR.

In sum, the district court's factual findings as to Hernandez's relevant conduct and the quantity of drugs attributable to him are "plausible in light of the record as a whole," meaning those findings are not clearly erroneous. *Turner*, 319 F.3d at 724 (quoting *Johnston*, 127 F.3d at 403). We decline to overturn the district court's sentence on these grounds.

While this holding resolves Hernandez's principal arguments regarding the issues of relevant conduct and drug quantity, Hernandez makes additional arguments on these fronts. First, he argues that the district court's consideration of statements from Hernandez's co-conspirators violated his Sixth Amendment right of confrontation under *Crawford v. Washington*, 541 U.S. 36 (2004). But Hernandez acknowledges that this court has held that "there is no *Crawford* violation when hearsay testimony is used at sentencing, rather than at trial." *United States v. Beydoun*, 469 F.3d 102, 108 (5th Cir. 2006). Hernandez asks us to reexamine *Beydoun*, but the rule of orderliness prevents us from overturning another panel's decision absent an intervening change in the law, which Hernandez fails to present. *Mercado v. Lynch*, 823 F.3d 276, 279 (5th Cir. 2016).

Next, Hernandez takes issue with the district court's sentence on a variety of other grounds: (1) Sixth Amendment right to a jury trial; (2) due process under the Fifth Amendment; and (3) due process under the Fourteenth Amendment. But "[t]he Fourteenth Amendment protects against actions by states" such that when "the federal government is the

subject of [a] petitioner's complaints," "the Fourteenth Amendment [is] inapplicable." *Richard v. Hinson*, 70 F.3d 415, 417 (5th Cir. 1995). And Hernandez failed in the district court to object based on the Fifth and Sixth Amendments, so the applicable standard of review is plain error. *See United States v. Mondragon-Santiago*, 564 F.3d 357, 361 (5th Cir. 2009) ("When a defendant fails to raise a procedural objection below, appellate review is for plain error only." (quoting *United States v. Lopez-Velasquez*, 526 F.3d 804, 806 (5th Cir. 2008))).

We find no plain error in the district court's sentence. The law as to Hernandez's Sixth Amendment claim is clear: "[S]entencing within the statutory minimums and maximums following a guilty verdict and applying the Sentencing Guidelines is for the district judge to decide." *United States v. Leontaritis*, 977 F.3d 447, 451 (5th Cir. 2020). Hernandez challenges the district court's sentencing, so his right to a jury trial is not even implicated, much less violated.

As to Hernandez's due-process argument, he provides no support for his contention that the Fifth Amendment requires proof beyond a reasonable doubt at sentencing. To the contrary, "[w]e have repeatedly held that a district court may find the facts relevant to a defendant's Guidelines calculation by a preponderance of the evidence." *United States v. Scroggins*, 485 F.3d 824, 834 (5th Cir. 2007).

## III.

Next, Hernandez contends that the district court erred in applying the four-level leadership enhancement under U.S.S.G. § 3B1.1(a) because it was not supported by the record. "A trial court's finding that a defendant is a leader or organizer is a factual finding reviewed for clear error." *United States v. Haines*, 803 F.3d 713, 744 (5th Cir. 2015). Section 3B1.1(a) instructs judges at sentencing to "increase the offense level [by four levels] . . . [i]f the

defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." U.S.S.G. § 3B1.1(a). A comment to this section lists the following factors for the district court to consider when determining whether a defendant was a leader or organizer:

> the exercise of decision-making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

U.S.S.G. § 3B1.1 cmt. n.4.

Hernandez fails to present any clear error in the district court's finding that he served as a leader of the drug trafficking activities. Hernandez identifies a number of facts that allegedly contradict the district court's finding on this point, but he fails to explain how they do so or to connect them in any way to the relevant factors above. We have indicated that a participant's failure to heed the defendant's instruction suggests a lack of exercise of authority over those individuals. *United States v. Lewis*, 476 F.3d 369, 389 (5th Cir. 2007). Hernandez presumably attempts to make such an argument when he notes that he had to bribe one co-conspirator with extra cocaine to get him to meet in an inconvenient location. But there is also evidence of Hernandez undisputably exercising control and authority over his co-conspirators. For example, Mora met the undercover source at Hernandez's direction and indicated that the two of them might complete

deals going forward using Hernandez's drugs.[3] Hernandez recruited Bustos and Meza to sell drugs in Monahans. He collected cash from them as well.

More importantly, Hernandez fails to show how the facts the district court relied on as the basis for its factual finding were not supported by the record. Hernandez alone sourced the drugs for himself and his co-conspirators from his contacts in Ciudad Juárez, Mexico. Hernandez described himself as the "main guy" and "bigger in the operation than the rest of them." And he fronted Bustos and Mora cocaine on multiple occasions. *See United States v. Wilson*, 622 F. App'x 393, 402–03 (5th Cir. 2015) (viewing the fact that defendant "sold and fronted cocaine to many of [his co-conspirators]" as indicative of leadership role).

Hernandez failed to cast doubt on the reliability of this evidence. Accordingly, we find no clear error in the district court's application of the four-level leadership enhancement under U.S.S.G. § 3B1.1(a).

## IV.

Hernandez next objects that the PSR contained information that was not disclosed in discovery prior to entering the plea agreement, specifically Mora's and Bustos's proffers. These proffers were allegedly the basis for the PSR including 4 kilograms of cocaine from Mora and 16.54 kilograms of cocaine from Bustos in the total quantity of cocaine attributed to Hernandez. But the probation officer preparing Hernandez's PSR had an opportunity to respond to this objection and wrote that "all of the information used to complete the table was gleaned from information located in the discovery provided by the Assistant U.S. Attorney's office." The government eventually disclosed the reports containing these proffers, but not until after

---

[3] Hernandez pleaded guilty to aiding and abetting Mora in Count Six, in addition to the possession charge.

the guilty plea. At sentencing, Hernandez renewed this objection, but the court overruled it and adopted the PSR.

Regardless of whether the post-plea proffers formed the basis for the roughly 20 kilograms added to the total quantity of drugs, Hernandez waived any claim of untimely disclosure by virtue of express language in his plea agreement.  The plea agreement stated that "[Hernandez] agrees to waive any claims [he] may have now or may acquire later to any information possessed by the prosecution team that might be subject to disclosure under discovery rules, including but not limited to the Federal Rules of Criminal Procedure." We have stated that "[b]y pleading guilty to an offense . . . a criminal defendant waives all non-jurisdictional defects preceding the plea." *United States v. Owens*, 996 F.2d 59, 60 (5th Cir. 1993) (per curiam). And we have even applied this principle to the same objection that Hernandez raises here, namely, that the prosecution failed to comply with a pretrial discovery order. *See United States v. Luper*, 88 F. App'x 796, 799 (5th Cir. 2004) ("Luper waived any argument that the prosecution failed to comply with the court's pretrial discovery order when he pleaded guilty."); *United States v. Santa Cruz*, 297 F. App'x 300, 301 (5th Cir. 2008) (per curiam) ("Moreover, Santa Cruz expressly waived all pretrial discovery issues in his plea agreement."); *see also United States v. Palacios*, 928 F.3d 450 (5th Cir. 2019) ("A voluntary guilty plea waives all nonjurisdictional defects in the proceedings against the defendant." (quoting *United States v. Glinsey*, 209 F.3d 386, 392 (5th Cir. 2000))). Therefore, Hernandez has waived his untimely-disclosure argument, and we cannot review it on appeal. *See United States v. Musquiz*, 45 F.3d 927, 931 (5th Cir. 1995) (noting that "[w]aived errors are entirely unreviewable").

No. 24-50072

## V.

Finally, Hernandez argues that the district court imposed sentences in excess of the statutory maximum as to Counts Two, Three, Six, Seven, and Eight. The government concedes that these sentences exceeded the maximum. The district court imposed concurrent 327-month sentences on all counts, including those for possession with intent to distribute cocaine in an amount fewer than 500 grams (Counts Two, Three, Six, Seven, and Eight) and for an amount greater than or equal to 500 grams (Counts Four, Five, and Nine). But under 21 U.S.C. § 841(b)(1)(C), the maximum term of imprisonment for amounts of cocaine under 500 grams is 20 years (240 months). Thus, the district court erred in sentencing Hernandez to 327 months of imprisonment as to Counts Two, Three, Six, Seven, and Eight.[4]

The government asks us to reform the sentences for these five counts to the statutory maximum of 20 years. We can avoid a remand for resentencing "[w]hen the record shows that the district court made it clear that the defendant should be sentenced to the maximum term permitted by the guidelines." *United States v. Hernandez-Guevara*, 162 F.3d 863, 878 (5th Cir. 1998). But here, the district court did not make that clear. The government argues that the district court adopted the PSR, which correctly listed the maximum sentence for the five counts at issue. But adopting the PSR is not equivalent to "ma[king] it clear that the defendant should be sentenced to the maximum term permitted by the guidelines." *Hernandez-Guevara*, 162 F.3d at 878. Therefore, we decline the government's request to

―――――――――――――――――

[4] This case appears apt for the "concurrence sentence doctrine," which states that "the existence of one valid sentence makes unnecessary the review of other sentences that run concurrently with it." *United States v. Soape*, 169 F.3d 257, 266 n.4 (5th Cir. 1999). But the doctrine does not apply where a defendant's liability for special assessments turns on the validity of each of the convictions. *Ray v. United States*, 481 U.S. 736, 737 (1987) (per curiam). Here, Hernandez received special assessments on all eight counts of conviction.

reform the judgment and instead VACATE the sentences as to Counts Two, Three, Six, Seven, and Eight, and REMAND for resentencing as to those counts only. *See United States v. Velasquez*, 710 F. App'x 189, 192 (5th Cir. 2017) (per curiam).

## VI.

For the above reasons, the district court's sentences are AFFIRMED IN PART, VACATED IN PART, and REMANDED for resentencing consistent with this opinion.